

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

January 30, 1957

Texas Employment Commission
Brown Building
Austin, Texas

Opinion No. WW-13

Re: Effect of the Ford Motor Company - UAW-CIO supplemental unemployment benefit plan upon the Texas Unemployment Compensation Act.

Gentlemen:

You have requested our opinion as to whether benefits paid from trust funds created by a contract between the Ford Motor Company and the UAW-CIO and a contract between General Motors Corporation and the UAW-CIO to an unemployed worker to supplement payments received from state unemployment compensation would effect a disqualification of such worker for state unemployment compensation under the provisions of the Texas Unemployment Compensation Act, Article 5221b (Vernon's Civil Statutes of Texas).

A review of the supplemental unemployment benefit plans in the two contracts demonstrates that they have no significant differences so far as your question is concerned; therefore, they will hereafter be treated as one and the same, and will be referred to as "the Plan". The companies will be referred to as "the employer", the beneficiaries of the Plan will be referred to as "the applicant", and the Texas Unemployment Compensation Act will be referred to as "the Act".

The features of the Plan, in summary, and only so far as necessary to a disposition of the questions presented, are that the employer has agreed with the applicant, through his bargaining agent, to contribute to a trust fund over a period of years at the rate of 5 cents for each hour for which the employee has received payment from the employer until the trust fund reaches a designated amount -- and thereafter only so much as is necessary to retain maximum funding, but never in excess of the 5 cent rate. The trust is non-contributory as to the employee, and is administered by a trustee independently of the employer. The assets of the trust are for the sole benefit of the employee, and under no circumstances revert to, or can be received by, the employer. The purpose of the Plan is to supplement state system unemployment benefits to the monetary level agreed upon by the parties, and not to replace or duplicate them. The object of the Plan is the payment to an eligible applicant by the trustee from the trust fund of such an amount as,

when added to the applicant's state unemployment benefit and other compensation for any week in question, will equal a certain percentage of his weekly after-tax straight time wage.

An applicant under the Plan is eligible for a supplemental benefit only if he is on lay-off from the employer with respect to the week for which application is made and if: (a) such lay-off occurred in consequence of a reduction in force or temporary lay-off, including a lay-off because of the discontinuance of a plant or other operation; (b) the applicant has registered at and has reported to an employment office maintained by the Texas Employment Commission, and has not failed or refused to accept employment deemed suitable under the Texas Employment System, and; (c) the applicant has received state unemployment benefits not currently under protest by the company. Several other conditions precedent are set out in the Plan, but are not deemed to be material to this discussion.

The Texas Unemployment Compensation Act sets up certain requirements before an unemployed individual shall be eligible to receive benefits during any benefit period (Art. 5221b-2, V.C.S.), and further provides certain conditions which will disqualify an unemployed individual from receiving benefits during any benefit period. (Art. 5221b-3, V.C.S.). For the purposes of this opinion it is only necessary to state that none of the conditions of disqualification include the payment of the type of benefits under the Plan. However, to be eligible for benefits under the Act, an individual must be "unemployed." The Act provides that "an individual shall be deemed 'totally unemployed' in any benefit period during which he performs no services and with respect to which no wages are payable to him." (Art. 5221b-17, V.C.S.). "Wages" as used in the Act is defined as "all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." (Art. 5221b-17, V.C.S.).

The specific question that must be answered is whether an individual who receives the supplemental benefits from the trust fund established by the Plan is "totally unemployed" within the meaning of the Texas Unemployment Compensation Act. As pointed out above, the statute states that an individual is "totally unemployed" in any benefit period during which (1) he performs no services and (2) "with respect to which no wages are payable to him," with "wages" being defined as "all remuneration for personal services."

A laid-off employee, during a period of lay-off which results for reasons specified in the Plan, and meeting all other eligibility requirements of the Plan, manifestly is performing no services. Hence, the applicant meets the first requirement that "he performs no services."

A more difficult problem arises in determining whether payments under the Plan are "wages", as defined by the Act, and thereby prevent the applicant from being "unemployed" within the meaning of the "Act". It will be noted that, before an employee will be deemed employed, the Act requires that "wages" be payable to the "employee" with respect to the benefit period for which he seeks State Unemployment Compensation.

The Plan, the funds collected and held in trust under the provisions of the Plan, and the payment of the funds to laid-off workers are very similar to the Texas Unemployment Compensation Act and the collection and distribution of funds thereunder. In Friedman v. American Surety Co. of New York, et al., ___ Tex. ___, 151.S.W.2d 570 (1941), the Supreme Court of Texas held that the unemployment compensation fund collected under the Texas Unemployment Compensation Act is a trust fund to be held by the State Treasurer as trustee for the benefit of a class of employees whose employers contribute by virtue of the excise tax levy. In declaring the Act to be constitutional, the Supreme Court stated that the benefits paid under the Act were "wages or compensation" of the employee:

"It is true that the employers alone directly create the unemployment fund, but it is created for the benefit of their employees. Therefore, the right of such employees to enjoy or participate in the fund in times of unemployment should be regarded as a part of their compensation or wages. All employees who labor or perform services for employers who are covered by this Act labor or serve in part for the right to enjoy the benefits of this unemployment fund. . . Those who come under its provisions have labored or served for such privilege . . . The right of an employee covered by this Act to participate in the fund created thereby is a part of the compensation earned while he is employed."

As "wages" is defined by the Act as "all remuneration for personal services", and in view of the Friedman case declaring benefits of this nature to be "wages" or "compensation", we are of the opinion that payments to an applicant under the provisions of the Plan are susceptible of being classified as "remuneration for personal services" or "wages" within the meaning of the Act. The Plan and the ultimate receipt of payments thereunder is the result of bargaining between the employer and the bargaining agent of the employee. It was one of the inducements by which the employee agreed to perform services and labor for the employer. Under the reasoning of the Supreme Court of Texas in the Friedman case we feel that such payments under the Plan can reasonably be classified as consideration or remuneration to the employee for services

performed by him to the employer, and therefore these payments are "wages" within the broad definition of that term given by the Texas Unemployment Compensation Act.

However, as pointed out above, to render the individual ineligible these "wages" must be payable "with respect to" the benefit period in question. The El Paso Court of Civil Appeals had a similar question before it in Western Union Telegraph Company v. Texas Employment Commission, et al., 243 S.W.2d 217 (1951) (dism., W.O.J.). Western Union dispensed with the services of an employee because they were no longer needed or required by the company. Under a contract of employment the company paid the individual a lump sum amount based upon a formula of total prior service. This payment was called "severance pay". The individual then applied for state unemployment compensation. It was contended by the company that the receipt of this severance payment made the employee ineligible to receive benefits under the Unemployment Compensation Act because the sums of money received represented wages and should be allocated to the period immediately subsequent to the discharge, and therefore the employee was not unemployed within the meaning of the Act. The employee took the position that the severance pay represented wages received with respect to past services rendered and therefore did not make her ineligible under the provisions of the Act. Both parties agreed that the payments were wages, and that question was not decided by the Court. However, in discussing the question of whether the individual was "totally unemployed" under the definition given by the statute, the Court stated that the employee:

> " . . . clearly, as is admitted, performed no services during the period, or any period subsequent to her discharge to which the company would apply payments made to her. Having performed no services during such period no wages could be payable to her with respect to such period. If the agreement that such sums are wages be accurate, then the wages must be applicable to some period with respect to which and during which she did perform personal services for the company." (Emphasis added.)

The Court, having stated that wages must be applicable to some period "with respect to which" and during which an employee performed personal services for the company, and that such severance pay was allocable against the period in which it was earned, and not against a period during which the employee had performed no services, we feel that the same reasoning must apply to the sums received by an applicant under the provisions of the Plan in question. The employee, or applicant, will perform no services during the benefit period, and therefore the funds received under the provisions of the Plan will be received because of services performed by the employee to the company prior to his lay-off. These funds must be allocable to the period during which the individual

performed services and will not be "with respect to" the benefit period during which he is seeking state unemployment compensation, and will, therefore, not make him ineligible to receive state unemployment compensation.

For cases similar to the Western Union case cited above, see In re Public Ledger, Inc., 161 F.2d 762; Ackerson, et al. v. Western Union Telegraph Co., et al., 48 N.W.2d 338 (S.Ct. Minn. 1951); Dubose v. Maine Employment Security Commission, 114 A.2d 359 (S.Ct. Maine, 1955).

We are therefore of the opinion that the receipt of supplemental unemployment benefits under the Plan will not render an individual ineligible to receive benefits under the Texas Unemployment Compensation Act. We note in passing that the same general conclusion has been arrived at by a great majority of our sister states who have considered the question.

## SUMMARY

Receipt of supplemental unemployment benefits from trust funds accumulated and paid out under the provisions of the contracts between Ford Motor Company and the UAW-CIO and General Motors Corporation and the UAW-CIO does not preclude an individual from receiving benefits under the Texas Unemployment Compensation Act.

Very truly yours,

WILL WILSON
Attorney General

By
Will D. Davis
Assistant

WDD:cm

APPROVED:

OPINION COMMITTEE
H. Grady Chandler,
Chairman