SCHENLEY DISTILLERS, INC. *v.* REVIEW BOARD OF INDIANA
EMPLOYMENT SECURITY DIVISION ETC., ET AL.

[No. 18,400. Filed May 18, 1953.]

 

*Charles A. Lowe,* of Lawrenceburg, for appellant.

*Edwin K. Steers,* Attorney General, and *William S. McMaster* and *Glen F. Kline,* Deputy Attorneys General, for appellee.

ACHOR, J.—This is an appeal from a decision of the Review Board of the Indiana Employment Security Division, in which decision the Board determined that the appellee, Alfred G. Brawand, was entitled to benefits under the Indiana Employment Security Act, beginning April 5, 1952.

The error assigned is that "the decision and judgment of the Review Board is contrary to law." There is no dispute as to the facts in this case. Therefore, both the Board's "Statement of Fact," "Findings and Conclusions" and "Decision" present a question of law under the error assigned. The Board's Statement of Fact, Findings and Conclusions are as follows:

> "Statement of Fact: The employer is engaged in the operation of distilleries at Lawrenceburg, Indiana. The claimant was employed by this employer for a period of 18½ years. On March 31, 1952, he was laid off because of lack of work, due to reduction in the production schedule.
>
> "At the time of his termination the claimant was paid $2,550 which was an amount equal to 21 times his weekly wage. This was paid in accordance with company policy of paying its employees a termination allowance based upon years of service, in lieu of notice. The payment was made in a lump sum, at the time the claimant's employment was terminated, and was not allocated to any particular weeks.
>
> "The claimant filed his claim for unemployment compensation on April 8, 1952, and has been unemployed since such time.

"Findings and Conclusions: The Review Board finds that the claimant was employed by this employer for 18½ years; that he was laid off on March 31, 1952, because of no work being available for him; and that during the week ending April 5, 1952, he was paid a termination allowance in the amount of $2,550 based upon his years of service with the employer.

"The Review Board further finds that such termination allowance was paid the claimant in a lump sum; that it was not allocated by the employer to any particular week or weeks; and that in accordance with the provision of Section 501 and 502 of the Indiana Employment Security Act such payment constitutes deductible income for the week ending April 5, 1952 the week in which it was paid.

"The Review Board further finds that the claimant filed his claim for Unemployment Compensation during the week ending April 12, 1952, and that if otherwise eligible he is entitled to claim that week and subsequent weeks for waiting period and benefit purposes."

The "Decision" of the Board was in accordance with its "Findings and Conclusions." It is appellant's contention that notwithstanding the Board's "Findings" that the termination allowance "was paid in a lump sum" and "was not allocated by the employer to any particular week or weeks," and its conclusion that "the claimant . . . is entitled to claim that week (ending April 12, 1952) and subsequent weeks for waiting period and benefit purposes," that application of the facts to the controlling statutes leads inescapably to a contrary conclusion and that these circumstances present a question of law reviewable by this court.

A determination of the case before us rests upon two primary considerations: (1) An interpretation of the pertinent statutes, and (2) the application of the facts to those statutes. Our courts have not heretofore been called upon to construe this particular aspect of

the provisions of our Unemployment Security Act. After extensive search for precedent in the texts and the reported cases of other states, we find that the few reported cases are not in agreement and that the texts are, therefore, equivocal in their statement of the law. See 25 A. L. R. 2d, pages 1070 and 1071, 147 A. L. R., pages 151-171, and cases cited.

The payment which concerns us was described by the parties as a "termination payment." It is otherwise described as "dismissal pay" or "dismissal wages" and, as such, is classified as "deductible income" within the terms of the Unemployment Security Act, §52-1529, Burns' 1951 Replacement. With regard to such "deductible income," Section 52-1529a provides that, "Bonuses, gifts or prizes . . . shall be considered as deductible income in and with respect to the *week* in which the same is *actually* paid." However, said statute provides that, "Dismissal pay; vacation pay; . . . (although paid in a lump sum as in the case before us,) shall be deemed to constitute deductible income *with respect to the week or weeks for which such payments are made; . . .*" (Our emphasis) unless such payment or payments are in excess of the weekly benefit amounts allowable for such week or weeks. In the latter event, the payment of benefits is controlled by §52-1539d, which provides as follows:

"An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which the individual receives, is receiving, or has received remuneration in the form of: dismissal wages (voluntary or required), . . .

"Provided, That if such payments are less than his weekly benefit amount an otherwise eligible individual shall not be deemed ineligible and shall be entitled to receive for such week benefits reduced by the amount of such payments."

In the case before us, the fact that the payment involved was "deductible income with respect to the week or weeks for which such payments are made," is established by §§52-1529 and 52-1529a, *supra.*

The practical question involved in this case is whether appellee Brawand, after being paid $2,550 as termination and vacation pay, was entitled immediately thereafter to also draw unemployment compensation. The legal question we are required to determine is whether, under the circumstances of payment, the lump sum payment was made (1) "with respect to the *week*" only, during which it was paid, or (2) whether such payment was made "for" and "with respect to the week or weeks" (20) following such termination payment.

Furthermore, we are confronted by the fact that in event payment was made "for" and "with respect to" a determinable number of weeks following termination of employment, since the amount paid was in excess of the weekly benefits to which appellee Brawand was otherwise eligible, then by the terms of §52-1539d *supra,* he was "ineligible for waiting period or benefit rights" for such weeks.

Upon these issues, appellee Brawand contends, and evidently the Review Board construed the statute (§52-1529a, supra,) to hold, that in order for a lump sum payment to be deductible income against the *weeks* beyond the week of payment, such payment must have been specifically "allocated" to "particular" weeks. However, careful scrutiny of the statute reveals that it does not so provide, except in the event of payment made by *order* or *agreement* pursuant to the provisions of the National Labor Relations Act or the Fair Labor Standards Act (§52-

1529a). The provisions of the statute in this regard are as follows:

". . . Provided, however, That if such payments made pursuant to the provisions of the National Labor Relations Act . . . or the Fair Labor Standards Act . . . are not, by the terms of the *order* or *agreement* under which said payments are made, allocated to any designated week or weeks, then and in such cases such payments shall be considered as deductible income in and with respect to the week in which the same is actually paid." (Our emphasis.)

Otherwise the Act merely provides that such payment "shall be deemed to constitute deductible income *with respect to the week or weeks for which such payments are made.*" §52-1529a, *supra.* Payment, in the case before us, was not made under any *order* or *agreement* pursuant to the provision of the National Labor Relations Act or the Fair Labor Standards Act. Therefore, the question is not whether the payment was specifically "allocated" to "particular" weeks, but can it be determined with certainty, the week or weeks "with respect to" and "for which such payment was made?" In other words, was the payment allocable to a period covered. by such payment?

The terms regarding the manner in which payment was made and received in the case before us is expressly provided in appellant's Standard Practice Bulletin, which is a voluntary statement of policy made by appellant with regard to relationship with its employees. This Bulletin, among other things, provides: (1) "Termination payments are granted in lieu of notice," on the basis of one week's pay for each year of service, "with the maximum allowance of 20 weeks," subject to the company's "right to discontinue termination payments without notice." (2) "If an employee. who is

eligible for vacation is separated from the payroll he shall receive vacation pay as provided in Standard Practice Bulletin 3." (3) That after termination of employment: "A former employee of the Corporation (or any of its affiliates), when applying for re-employment, shall not be hired by any division until his previous employment record has been obtained and carefully reviewed." And "If termination payments had been granted, the former employee may not be re-employed *within the period covered by such payments* unless he returns to the affiliate from which payment was received that portion which would otherwise be duplicated by subsequent salary payments." (Our emphasis.)

(1.) The term "termination payments *in lieu of notice*," has an accepted usage as follows:

"Dismissal notice may be defined as advance notice given by the employer of his intention to dismiss the employee. Sometimes in lieu of such notice the employee's salary is paid for the period which would otherwise be covered by the notice. . . ." 147 A. L. R., page 154, *supra*.

In the case before us, appellant's Bulletin provided for termination payment of one week's salary for each year of service, "with a maximum allowance of 20 weeks . . . in lieu of notice." The natural and reasonable view of this provision is that the employer paid and the employee accepted said sum to indemnify the latter against the consequent loss of occupation, the indemnity being arbitrarily fixed at one week's salary for each year of employment.

(2.) Likewise, the three weeks' "vacation pay" was, in the express terms of the statute, paid *"with respect to the week or weeks for which such payment was made,"* and was, therefore, "deductible income" within the concise terms of §52-1529a. The

fact that it was not "allocated to any designated week or weeks," as, for example, the *first* three weeks or the *last* three weeks of the period covered by the lump sum payment, but was commingled with a sum paid as a "termination payment in lieu of notice," was immaterial under the facts before us. Clearly, under the statute, the employee could not draw unemployment compensation during the period for which he was receiving full vacation pay, provided such period was determinable.

(3.) Finally, the Bulletin by its own terms made an express stipulation with respect to *"the period covered by such* (termination) *payments."* True, there is oral testimony that appellant carried the fund as an accounting item in a lump sum, not "allocated to any designated week or weeks," for which payment was made, but "the period covered by such payments," for all practical purposes, must be accepted as being with respect to the period following termination and payment, for which payment was made. The sum paid, and the "period covered," were allocable with absolute certainty. Therefore, these facts would seem to lead inescapably to the conclusion that the payment of three weeks' vacation pay and 18 weeks' termination pay was made with respect to a period of 21 weeks following termination of employment, for which appellee, Brawand, was paid. Said payment must be considered "deductible income" for that period.

Outside the express terms of the Bulletin, oral testimony as follows seems indisputably to support the conclusion: "The purpose of making this payment to an employee is to give him his weekly wages during these weeks (the period covered by such payments) in order to tide him over until he can find another job, that is company policy."

The "Finding" by the Board "that such termination allowance was paid the claimant in a lump sum, (and) that it was not allocated by the employer to any particular week or weeks," was merely the statement of evidentiary facts which, under the circumstances of the case, was not controlling of the conclusion. This being "termination pay," it was, by statute, made "deductible income," *with respect to the week or weeks for which payment was made.* Therefore, the ultimate fact which was the duty of the Board to determine, was the week or weeks *"with respect to"* and *"for which" payment was made.* This the Board failed to do.

Upon this issue of fact, we conclude that the evidence leads inescapably to the conclusion that the "termination payment in lieu of notice" and "vacation pay" here involved, although made in a lump sum and, as an accounting item, not allocated to any particular week or weeks, *was* allocable and was made "for" and "with respect to" a period of 21 weeks, including the week of such payment for which such payment was made. Said sum being in excess of the maximum benefits to which the employee was entitled for said period, as provided by §52-1539d, *supra,* said employee was "ineligible for waiting period or benefit rights" for the weeks he received such dismissal and vacation pay.

The decision of the Review Board is, therefore, reversed.

NOTE.—Reported in 112 N. E. 2d 299.