GLOBE–DEMOCRAT PUBLISHING COMPANY, a Corporation, Appellant,

v.

The INDUSTRIAL COMMISSION of Missouri, The Division of Employment Security of the Department of Labor and Industrial Relations, and Ernest J. Yaeger, Respondents.

No. 29643.

St. Louis Court of Appeals. Missouri.

May 7, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied May 31, 1957.

Jones, Hocker, Grand, Peper, Martin & Roudebush and Harold B. Bamburg, St. Louis, for appellant.

Lloyd G. Poole, Jefferson City, for respondent Industrial Commission.

George Schwartz, Jefferson City, for respondent Division of Employment Security.

Morris J. Levin and Donald S. Siegel, St. Louis, for respondent Yaeger.

MATTHES, Judge.

The Globe-Democrat Publishing Company has appealed from the judgment of the Circuit Court, which affirmed the decision of The Industrial Commission of Missouri holding that Ernest J. Yaeger was eligible for unemployment compensation benefits. For the sake of brevity the Globe-Democrat Publishing Company will be referred to as Publisher, The Industrial Commission of Missouri as Commission, and Ernest J. Yaeger will sometimes be referred to as Employee.

The facts are undisputed and disclose that Yaeger was an employee of Publisher from February 10, 1943, to April 23, 1955, when he was discharged for a reason other than his own willful breach of duty or willful

misconduct. At the time Employee was separated from service there was in force and effect a collective bargaining contract between the Publisher and The St. Louis Newspaper Guild, of which Employee was a member. Article IV of the contract provided, inter alia, that:

"1. When an employee is dismissed otherwise than as a result of his own willful breach of duty or willful misconduct, he shall be compensated in addition to the sum otherwise due him one (1) week's pay for each six (6) months last continuous employment by the Publisher to a maximum of forty-eight (48) weeks in dismissal pay.

"2. * * * Dismissal compensation shall be computed at the highest weekly wage (excluding any night differential payment) received by the employee within the previous 12 months;"

Upon being dismissed the Employee received a lump sum dismissal payment equal to twenty-four weeks' pay in the total amount of $1,825.75, less deduction for taxes. Thereafter, and on April 29th, Employee filed a claim for benefits under the Missouri Employment Security Law for the week ending May 7, 1955. A Deputy of The Division of Employment Security determined and found that the dismissal pay received by Employee covered the period from April 24, 1955, to October 8, 1955 (24 weeks), and that for said period Employee was ineligible for benefits. An Appeals Referee, after hearing, also ruled that the dismissal pay constituted termination allowance within the meaning of the law, and that it was paid for the twenty-four weeks following April 23, 1955, for which period Employee was ineligible for benefits. On review the Commission reversed the decision of the Appeals Referee. It found that although the dismissal payment was in an amount equivalent to twenty-four weeks' pay, it was not designated as being paid for the twenty-four con-

secutive weeks immediately following Employee's separation and therefore constituted termination allowance for only the week in which it was paid, and that Employee was "entitled to benefits, if otherwise eligible, notwithstanding his receipt of the lump sum termination allowance of $1,825.-75, except for the week in which such lump sum payment was received by him". As stated, this decision was affirmed by the judgment of the Circuit Court.

The case is one of first impression in this jurisdiction. The determination thereof requires construction of the statutory provisions relating to payment of unemployment benefits. Section 288.040, subd. 2(1),[1] here applicable, provides:

"A claimant shall be ineligible for waiting week credit or benefits for any week for which he is receiving or has received remuneration exceeding his weekly benefit amount in the form of

"(a) Wages in lieu of notice;

"(b) *Termination allowances;*

"(c) Compensation for temporary partial disability under the workmen's compensation law of any state or under a similar law of the United States;

"(d) Old age benefits under Title II of the Social Security Act, as amended (42 U.S.C.A. § 401 et seq.), or similar payments under any act of congress;

"(e) A pension paid in whole or in part from funds furnished by an employing unit to the extent that such pension is provided from funds not provided by the claimant." (Italics supplied.)

In light of the foregoing statute which disqualifies a claimant for benefits for any week for which he is receiving or has received remuneration in the form of termination allowances, the Publisher contends that the amount paid Employee upon his discharge not only constituted a termination

---

1. All statutory references are to V.A.M.S.

allowance, but that it disqualified Employee for the twenty-four weeks following separation from service. This contention is based upon the fact that the dismissal payment was equivalent to the sum of Employee's wages for the period of twenty-four weeks. Employee argues with much insistence that the dismissal payment does not come within the purview of the disqualifying statute. He insists that such payment was not a termination allowance; was made only with reference to the period prior to his discharge for which and during which period said dismissal payment was earned; and that it was paid for purposes other than tiding him over or protecting him from the hazards of unemployment following his discharge. It is further urged by Employee that, "the dismissal pay is in the nature of a deferred bonus or settlement payment made by the employer for the employee's loss of opportunity to continue his equity in his job and to retain further enjoyment of those rights and benefits granted employees under said collective bargaining agreement". The Commission advances two theories in this court. Following the contention that the dismissal payment was a termination allowance contemplated by the statute which had the effect of disqualifying Employee for only the week in which it was paid, it advances the somewhat inconsistent argument that the payment actually represented additional remuneration for the Employee's prior services.

The Commission based its decision on Ackerson v. Western Union Telegraph Co., 1951, 234 Minn. 271, 48 N.W.2d 338, 25 A.L.R.2d 1063. In this court Employee and Commission insist that the Ackerson case is squarely in point and urge us to follow it. In addition to Ackerson, the Employee and Commission rely upon: Western Union Telegraph Co. v. Texas Employment Commission, Tex.Civ.App.1951, 243 S.W.2d 217; Dubois v. Maine Employment Security Commission, Me.1955, 114 A.2d 359; Industrial Commission of Colorado v. Sirokman, Colo.1957, 306 P.2d 669; Owens v. Press

Publishing Co., 1956, 20 N.J. 537, 120 A.2d 442; Adams v. Jersey Central Power & Light Co., 1956, 21 N.J. 8, 120 A.2d 737.

An analysis of the Minnesota Statute, M.S.A. § 268.08, which sets up the disqualification for benefits discloses that it is substantially the same as the Missouri Act. The collective bargaining contract involved in the Ackerson case is likewise strikingly similar to the instant agreement with respect to dismissal pay. The only difference is that in the Ackerson case the employee had the right to choose to be paid a lump sum separation allowance and, instead of providing, as does the instant contract, that he would be compensated one week for each six months of continuous service, it provided that the separation allowance "shall be determined on the basis of four weeks' pay at the regular rate of the position last occupied, for every year of service, * * *". [234 Minn. 271, 48 N.W.2d 339.]

The Appeal Tribunal in the Minnesota case ruled that the severance payment constituted a delayed payment based on services performed prior to the date of termination. The Supreme Court of Minnesota held that such reasoning was untenable, and chose to base its decision on the theory that the severance pay actually constituted compensation for loss of seniority rights, loss of pension rights, and compensation for retraining or acquiring new skills. It is interesting to note, however, that the Minnesota court pointed out that employment and security divisions in the states of California, Florida, Massachusetts, Pennsylvania, Indiana, Kansas, Maine, Maryland, and Tennessee had held that severance payments should be considered as wages in the future and that the employee was ineligible for benefits until the expiration of the number of weeks for which payment was so made. See footnote 1 in 48 N.W.2d loc. cit. 340.

Western Union Telegraph Co. v. Texas Employment Commission, supra, is clearly distinguishable. The Texas Statute pro-

vides that, "An individual shall be deemed 'totally unemployed' in any benefit period during which he performs no services and with respect to which no wages are payable to him." Vernon's Ann.Civ.St. art. 5221 b–17*(l)*. Under that statutory provision the court held that the severance allowance did not disqualify the claimant. The court was careful to emphasize that the Texas Act does not render a claimant who has received a separation allowance ineligible for benefits.

The claimants in the Dubois case, supra, were not discharged. They retired. The bargaining contract provided for a lump sum pension plan. Pursuant thereto the claimants received a lump sum payment. Under those facts the Maine court ruled that the payment did not constitute "dismissal wages" which disqualified a claimant from receiving benefits.

The case of Industrial Commission of Colorado v. Sirokman, supra, presents a vitally distinguishing feature. The Colorado Statute does not disqualify a claimant for benefits on account of receipt of termination allowances. The disqualification goes to remuneration in the form of "wages in lieu of notice". C.R.S. '53, 82–4–12. The claimants received separation allowances in compliance with the terms of the collective bargaining agreement. The Supreme Court of Colorado quite properly held that remuneration in the form of separation allowances could not be construed to mean wages in lieu of notice.

The Owens and Adams cases, supra, decided by the Supreme Court of New Jersey, did not involve the right of a discharged employee to recover unemployment benefits. The essential issue in the Owens case was focused upon the construction of a severance pay provision of a collective bargaining agreement, and particularly the right of the plaintiffs to receive such severance pay. The Adams case involved essentially a controversy between the appellant and the New Jersey Natural Gas Company as to whether the obligation of severance pay rested upon one or the other.

While the Publisher recognizes that the opinion in the Ackerson case is the first judicial determination of the question here presented, it strongly asserts that other jurisdictions have not only refused to follow the principle therein enunciated, but have laid down a contrary rule. Our attention is directed to a number of decisions by courts of other jurisdictions.

Bradshaw v. California Employment Stabilization Commission, 46 Cal.2d 608, *297 P.2d 970*, relied upon by Publisher, was decided by the Supreme Court of California in 1956. There the claimant was discharged from his job with the San Francisco Chronicle. Pursuant to the collective bargaining agreement, he received "dismissal pay" in an amount which was governed by his length of service. Claimant was denied unemployment benefits by the Unemployment Insurance Appeals Board. The point on appeal involved the propriety of denying benefits for a period equal to the number of days for which claimant had received dismissal pay. The California Act provides that, "An individual is 'unemployed' in any week during which he performs no services and *with respect to which no wages are payable to him * *.*" West's Ann.Unemployment Insurance Code, § 1252. (Italics supplied.) There, as here, claimant insisted that the dismissal pay was for services rendered prior to and not subsequent to the day of his discharge. In rejecting this contention, and in affirming the decision of the board, the court held that the dismissal payment was made with respect to the weeks following claimant's separation from service, and that the parties to the contract obviously intended the dismissal payment to serve the same purpose as unemployment compensation, which is to tide the disabled employee over until he can secure employment.

Our attention is also invited by Publisher to the cases of Schenley Distillers

v. Review Board of Ind. Emp. Sec. Div., 1953, 123 Ind.App. 508, 112 N.E.2d 299; Brannigan v. Administrator, Unemployment Comp. Act, 1953, 139 Conn. 572, 95 A.2d 798; Kalen v. Director of Division of Employment Security, Mass.1956, 136 N.E.2d 257; and Krupa v. Western Union Telegraph Co., 1951, 90 Ohio App. 90, 103 N.E. 2d 784. These authorities have received our careful consideration. A detailed analysis thereof would serve no useful purpose. It is sufficient to say that the Schenley and Brannigan cases involve factual situations grossly dissimilar to the instant case. In the Krupa case the court found that there was evidence, in addition to the collective bargaining contract, to establish that the severance pay constituted remuneration for a period following termination from service. The Kalen case is more in point, but again the disqualifying statute, while similar, does have a distinguishing feature.

The only definite conclusion that can be reached from an analysis and consideration of the authorities in other jurisdictions is that there is a complete lack of unanimity of opinion on the basic question here presented.

▇▇▇ We are of the opinion that the Commission reached the proper decision in holding that the dismissal payment constituted termination allowance within the meaning of Section 288.040, subd. 2(1) (b). Thus the crucial question is: Did the lump sum termination allowance render Employee ineligible for only one week as found by the Commission, or for twenty-four weeks following his discharge as contended by Publisher? We are forced to reject the tenuous theory advanced by Employee and the Commission that the dismissal payment was in the nature of a deferred bonus or represented additional remuneration for the services rendered prior to Employee's discharge. For it is clear that if Employee had been discharged because of willful breach of duty or willful misconduct, or had voluntarily retired, he would have received nothing. Or, if he had died before separation from his job, his estate would not have benefited. If the amount paid fell in the category of a bonus or past wages, Employee would have had a vested right therein regardless of the manner in which his employment was terminated. Neither can we subscribe to the theory that the payment was designed to compensate Employee for loss of valuable contract rights, e. g., job security, sick leave, insurance and welfare provisions, and enlarged vacations; or that the amount Employee received was intended to partially compensate and reimburse him for damages he might sustain in the event he was compelled to relocate his home. Nothing appears in the contract to justify the conclusion that the parties so intended and we are not at liberty to rewrite the agreement by a judicial interpretation thereof. In this respect it appears that Employee has placed more emphasis than is warranted on the purpose or purposes which a discharged employee might make of the amount received, and has overlooked the real factor, viz., the *reason* for payment.

We are not unmindful that upon being discharged the Employee was entitled to the dismissal pay regardless of his future employment status, that is, even though he had secured another job the day following his separation, the Publisher was nevertheless obligated under the contract to make the payment. But it by no means follows that because of this circumstance the amount paid was removed from the category of a termination allowance. The disqualifying statute is not limited in its application to a termination allowance paid or received for any specific purpose, nor does its application depend upon the future status of the discharged employee.

▇▇▇ In construing Section 288.040, subd. 2(1)(b), we are mindful of the principle which underlies all rules of statutory construction, namely, that we should first seek the intention of the legislature, and if possible effectuate that intention. Well-

ston Fire Protection Dist. of St. Louis County v. State Bank & Trust Co., Mo. App., 28 S.W.2d 171, loc. cit. 174; State on Information of Dalton v. Dearing, 364 Mo. 475, 263 S.W.2d 381. In arriving at the intention of the legislature the objectives of the enactment are to be considered. In re Duren, 355 Mo. 1222, 200 S.W.2d 343, loc. cit. 352, 170 A.L.R. 391; State ex rel. Gerber v. Mayfield, Mo.Sup., 281 S.W. 2d 295; Wellston Fire Protection Dist. of St. Louis County v. State Bank & Trust Co., supra. It is equally fundamental that in interpreting a statute we must place a construction thereon which is reasonable and logical and will give meaning thereto. In re H—— S——, 236 Mo.App. 1296, 165 S.W.2d 300. Stated conversely, the law does not look with favor on a construction which will lead to an unjust, absurd, or unreasonable result. State ex rel. Moseley v. Lee, 319 Mo. 976, 5 S.W.2d 83; Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832; Wellston Fire Protection Dist. of St. Louis County v. State Bank & Trust Co., supra.

■ Tested by these principles we cannot subscribe to the theory adopted by the Commission and hold that the Employee found himself ineligible for benefits for only one week. The statute is not susceptible to the construction that a claimant is ineligible for only the week *in which* the disqualifying payment is made, regardless of the amount thereof. It clearly provides that, "A claimant shall be ineligible for * * * benefits *for* any week *for* which he is receiving or has received remuneration * * * in the form of * * * Termination allowances." (Italics supplied.) To adopt the position contended for would not give the statute life and meaning, and effectuate the obvious intention of the legislature. Exactly the opposite result would be accomplished and for all practical purposes the statute would be emasculated.

Reverting to the contract, it will be observed that it does not merely provide for dismissal payment of an arbitrary lump sum. Rather, it imposes upon the Publisher the obligation of paying to any employee it chooses to discharge one week's pay for each six months of continuous employment. We have demonstrated that such a payment is not a bonus or wages for past services. A more reasonable and logical interpretation is that the payment, being an amount equivalent to a certain number of weeks' pay, relates to the same number of weeks immediately following the discharge of the Employee. So in this case we hold that inasmuch as the $1,825.75 received by the Employee was equivalent to twenty-four weeks' pay, he was disqualified and rendered ineligible for benefits for a corresponding period immediately following the termination of his employment.

The judgment is reversed.

RUDDY, P. J., and ANDERSON, J., concur.