(No. 34564.—

THE KROGER COMPANY, Appellee, vs. LOUIS N. BLUMEN-
THAL et al., Appellants.

*Opinion filed March 20, 1958.*

LATHAM CASTLE, Attorney General, of Springfield,
(WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA
GROVES, of counsel,) for appellants.

EVERETT PROSSER, and JOHN G. GILBERT, both of Car-
bondale, (RICHARD V. RUNYAN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

A deputy for the Division of Unemployment Compen-
sation determined that Joseph Schonhoff, a former em-
ployee of the Kroger Company, was eligible for unemploy-
ment compensation. This determination was affirmed by
a referee and the referee's determination was affirmed by
the board of review of the Department of Labor. In a
proceeding under the Administrative Review Act the cir-
cuit court of Jackson County reversed the decision of the

board of review. This appeal followed. Ill. Rev. Stat. 1953, chap. 48, par. 520.

On October 30, 1954, Joseph Schonhoff was fifty-nine years old. He had been an employee of the Kroger Company for twenty-nine years. He was a district manager in Carbondale, and his salary was $587 for each pay period of four weeks. The quality of his work had apparently become unsatisfactory, and, from November of 1953 on, there were many discussions between Schonhoff and his superiors as to his future. In July of 1954, the company's general manager told him that his services would be terminated and that he would be paid separation pay. In August, 1954, the general manager told him that the company did not want to fire him and would explore the possibility of retiring him under its retirement program.

Under the company's retirement program an employee's pension rights vest at age sixty-five. Between the ages of fifty-five and sixty-five, disability pension payments may be granted at the discretion of the company to employees who have a minimum of fifteen years' service and have become disabled. Schonhoff testified that he was referred to a physician for a physical examination, and that although his health was not impaired and he was not interested in retirement, he signed an application for early retirement on account of physical disability because he felt that he had no other alternative. The company's board of directors approved a disability pension of $150.11 a month. The pension could be discontinued at the employer's discretion at any time, however, and Schonhoff rejected it, primarily, he testified, because he was unable to find out what kind of activities he would be allowed to engage in. He was then offered and accepted a lump sum separation payment of $5283 under the employer's separation pay policy, and his employment was terminated on October 30, 1954.

The company's separation pay program provides for a lump sum payment upon termination of employment. It

applies only to key employees. Employees make no contributions under the program, and payments under it are made only when approved by the company's board of directors. The amount of any payment is computed upon the employee's length of service and his base pay. Four weeks' wages are paid for each three years of service. Schonhoff's separation pay, thus computed, amounted to $5283, which was equal to his salary for nine pay periods, or thirty-six weeks.

A separation payment is ordinarily paid in a single lump sum at the time of termination of employment. To avoid additional income tax for 1954, Schonhoff requested that the payment be made to him in two installments, one in December of 1954, and the other in January of 1955. The employer granted this request and made two lump sum payments. The first was equal to two four-week periods of pay, or $1174; the second was equal to seven periods of pay, or $4109.

One of the employer's personnel managers testified that the allowance of separation pay is discretionary with the company and that it is denied if the employee's record is unsatisfactory or if he voluntarily quits or is discharged for improper conduct. He also testified that the company's purpose is to assure that a managerial employee will have sufficient income to permit him to maintain his standard of living until he finds suitable employment, and that the company's view is that because of the specialized skill, length of service, and standard of living of such an employee, he should be in a position to support his family at the same level until he finds a job that will make use of these specialized skills and remunerate him at the same level.

The company did not pay any contributions to the State Unemployment Compensation Fund on the separation payment made to claimant in December of 1954, because contributions are paid only on the first $3000 of an individual's wages in a calendar year, and contributions on that amount

of claimant's wages for the year 1954 had already been paid. It did pay contributions on $3000 of the payment made in January of 1955, and it withheld social security and income tax deductions from both payments.

Upon these facts the question is whether Schonhoff was eligible for benefits under the Unemployment Compensation Act during the period immediately following the termination of his employment on October 30, 1954. There is no doubt that he was unemployed in fact, and was seeking employment. But in this instance, as in others, the statute furnishes its own definitions of the terms it uses. Section 239 of the act governs eligibility for unemployment benefits. It provides that an individual shall be deemed unemployed "in any week with respect to which no wages are payable to him and during which he performs no services." Ill. Rev. Stat. 1953, chap. 48, par. 349.

Schonhoff was not required to, and did not, perform any services for the company after October 30, 1954. There is no doubt, and the parties agree, that the separation pay that he received constituted "wages" as defined in the act, and it is not necessary to analyze the provisions that lead to that conclusion. (See Ill. Rev. Stat. 1953, chap. 48, pars. 344, 345, 370.) But the test of "unemployment" in section 239 is stated in conjunctive terms, and it is therefore necessary to consider whether the separation pay, which constitutes wages under the act, was "payable" to him "with respect to" any weeks after October 30, 1954.

The question of the effect of separation pay upon eligibility for unemployment benefits is new with us. It has, however, arisen in several other States. In some of them the problem has been resolved by an express provision of statute or regulation. (*Kalen* v. *Director of Employment Security*, 334 Mass. 503, 136 N.E.2d 257; *Globe-Democrat Publishing Co.* v. *Industrial Com. of Missouri*, 301 S.W.2d (Mo. App.) 846; *Santus* v. *Unemployment Comp. Board*, 177 Pa. Super. 496, 110 A.2d 874.) In others the applicable

statutory provision has differed so substantially from ours that the decisions do not assist us here. *Brannigan* v. *Administrator Unemployment Comp.* 139 Conn. 572, 95 A.2d 798; *Fazio* v. *Unemployment Comp. Board,* 164 Pa. Super. 9, 63 A.2d 489; *Schenley Distillers, Inc.* v. *Review Board,* 123 Ind. App. 508, 112 N.E.2d 299.·

Several cases, however, have involved the construction of statutes whose relevant provisions are identical with ours or very similar to them. (*Ackerson* v. *Western Union Telegraph Co.* 234 Minn. 271, 48 N.W.2d 338; *Western Union Tel. Co.* v. *Texas Employment Com.* 243 S.W.2d (Tex. Civ. App.) 217; *Dubois* v. *Main Employment Com.* 150 Me. 494, 114 A.2d 359; *Ind. Com. of Colorado* v. *Sirokman,* 134 Colo. 481, 306 P.2d 669.) In each of these cases it was held that the separation or dismissal payments were made "with respect to" the period before termination of employment. In each of them the predominantly retrospective aspect of separation payments was emphasized. Dismissal pay was regarded as earned during the period of employment, or as intended to compensate for pension or seniority rights that were lost upon separation from employment.

A contrary result was reached, however, in *Bradshaw* v. *California Employment Com.* 46 Cal.2d 608, 297 P.2d 970, which also involved a statute like ours. There the majority of the court rested its decision denying unemployment benefits upon a policy which it found to exist against "duplication of payments to discharged employees." This policy was held to "require an employee who claims what appear to be duplicating payments to show that there is no duplication," a burden that the claimant failed to meet. Three justices dissented, pointing out that the statute does not make the right to benefits depend upon the financial need of the claimant. See 57 Col. L. Rev. 437; 100 U. of Pa. L. R. 144; cf. 8 Hastings L. J. 233.

These decisions serve rather to point up the need for a clear statement of the legislative purpose than to furnish a certain guide to the meaning of the present statute. It seems anomalous to regard a man as unemployed while he is receiving weekly payments precisely equal to his salary while employed. It seems almost as anomalous to regard him as unemployed when he receives the same amount in a lump sum. But separation pay need not, and does not always, correlate precisely with the wages that the employee received before his employment ended. It may be fixed in terms of a percentage of prior wages, or in terms of a percentage of unemployment benefits, or it may be an arbitrary sum arrived at without reference to prior wages or to unemployment benefits. Nothing in the statute before us suggests that differing results can be based upon differences in the amount of separation pay or in the method of paying it.

The company urges that separation pay that is voluntarily made available to an employee should be treated differently than separation pay that is required by contract. But it is not suggested that such a distinction is warranted by the language or the policy of the State or Federal statute, and no very convincing basis for such a distinction has occurred to us. Nor do we find in the statute any sound reason for depriving an employee of unemployment benefits because his employer has decided to enhance the objectives of the act. See Opinions of the Attorney General of Illinois, 1956, No. 292; 31 Ind. L. J. 412.

Our decision must turn upon whether or not the amount that Schonhoff received was "payable with respect to" the period after his employment ceased. It is true that the amount he received equalled what his wages would have been for a period of 36 weeks. But all of the factors that went into the computation by which that amount was fixed related to what had happened in the past. All were retro-

spective. The payment was not fixed with a view to the actual or probable duration of his unemployment. It would not have been diminished if he had found a job the next day, and it would not have been increased no matter how long he remained unemployed. Rather its amount was fixed on the basis of one pay period for each three years of past service as an employee, and it was paid only because the employee's past record was approved by the company. In our opinion the separation pay that Schonhoff received correlated with his past performance, and not with his future conduct or needs. It was based wholly upon, and thus was payable "with respect to," the period before his employment terminated and not any period after it terminated. We hold, therefore, that he was not rendered ineligible for unemployment benefits for a 36-week period following October 30, 1954.

Another problem is suggested in the record but is not before us for decision. The payment made to Schonhoff in January of 1955 amounted to $4109. The company was required to and did pay unemployment compensation contributions on the first $3000 of this amount. The contribution so made was apparently regarded as effective to make Schonhoff eligible for unemployment compensation benefits for a period beginning on April 1, 1956. This result is sought to be justified on the ground that while eligibility for benefits is based on wages payable, liability for contributions is based on wages paid. (Ill. Rev. Stat. 1953, chap. 48, pars. 349,420.) Regardless of the problems involved in reporting wages and computing benefits for particular periods, the statute can not be construed in such a way as to authorize unemployment benefits based upon the receipt of dismissal or separation pay.

*Judgment reversed.*