CULPEPPER, Judge.
This is a suit for judicial review of a decision of the Board of Review of the Division of Employment Security of the Department of Labor, State of Louisiana, finding certain former employees of the plaintiff eligible for unemployment compensation benefits. From a judgment of the district court, amending and affirming the decision of the Board of Review, the plaintiff, Swift & Company, has prosecuted this appeal. See LSA-R.S. 23:1630 which sets forth the procedure for judicial review and appeal therefrom.
The district judge has so ably set forth the facts and the law that we have decided to adopt as our own his written opinion, as follows:
“This court has been petitioned to review the decisions of the Board of Review of the Division of Employment Security of the Department of Labor, State of Louisiana, rendered in the above entitled matters. The facts from which this issue arises, and which facts are not in dispute, are as follows.
“The claimants, respondents herein, were employees of the petitioner, Swift & Company, at its plant in Lake Charles, Louisiana, until or about April 22, 1960. On this latter date, the petitioner ceased operations in the aforementioned plant and the services of all the claimants herein were terminated. Upon the termination of the claimants herein, petitioner, Swift & Company, paid to said claimants separation allowances according to Section 71 of a contract entered into by and between Swift & Company and the claimants’ bargaining agent, The Amalgamated Meat Cutters and Butcher Workmen of North America. The separation allowances received by the claimants varied according to the length of service of each claimant with petitioner, pursuant to a schedule of computation contained in the working agreement. Subsequent to April 22, 1960, claimants filed applications with the Division of Employment Security of the Department of Labor, State of Louisiana, for unemployment compensation. Swift & Company filed objections to these claims for unemployment. The basis for Swift & Company’s objections were that the respondents were not entitled to receive unemployment benefits until the expiration of the number of weeks for which the respondents had been paid under Section 71 of the bargaining agreement.
“The two above entitled cases were consolidated for the purpose of this review since the issues in both cases are identical. The issue involved in this consolidated appeal is whether the payment of the severance allowances disqualifies claimants from receiving unemployment compensation benefits for those weeks equivalent to the weeks of payment of the severance allowances.
“The court has carefully reviewed the cases so ably cited and discussed by counsel for all parties and feels that it would belabor the question to enter into a discussion of 'the various cases, but it suffices to say that the cases are in direct conflict in the various states, others can be distinguished. The issue presented is one of interpretation of the provisions of the Louisiana Employment Security Law and the application of those interpretations to the bargaining agreement existing herein.
"The Board of Review concluded that the claimants herein were unemployed, ‘performing no services, and receiving no wages’. The first issue to be considered is whether the separation allowances shall be deemed ‘wages’ as defined by the Louisiana Employment Security Law.
*510 “‘R.S. 23:1472:
“ ‘(20) (A) “Wages” means all remuneration for services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash.
“ ‘ (C) The term “wages” shall not include:
“ ‘(III) Dismissal payments which the employing unit is not legally required to make.1
“Section 71 of the Swift & Company master agreement with Amalgamated Meat Cutters and Butcher Workmen of North America (AFI^CIO), under which the separation allowances were paid, provides as follows, to wit:
“ ‘71. (a) When Paid — Separation allowances shall be paid to employees having one (1) or more years of continuous service (including such employees in layoff status who have plant seniority and whose plant seniority has not been forfeited) who are permanently separated from the service either because of a reduction in forces arising out of the closing of a department or unit of the business or because of technological change in production adopted by the Company and when it is not expected that they will be reemployed.
“ ‘(b) When Not Paid — Separation allowances are not paid:
“T. To employees with less than one year’s continuous service;
“ ‘2. To employees laid off in gang reductions except as provided in sub-paragraph (a) above;
“ ‘3. In cases where the employee was discharged for cause;
“ ‘4. In cases of voluntary resignation ;
“ ‘5. In cases of employees retired on pensions;
“ ‘6. To employees who refuse an offer of employment by the Company in the same plant or in another unit of its business, the location of which is reasonably accessible to the location of the place of employment from which the employees are being dropped from the service. This subparagraph shall not apply where such offer of employment, because of a reduction of forces arising out of the closing of a department or unit of the business, is to a job the authorized wage rate of which is more than fifteen (IS) cents less than the authorized wage rate of the employee’s former regular assignment.
“ ‘(c) Method of Computing Separation Allowances — The following schedule is to be used in computing the number of week’s pay according to the years of continuous service. Payments are to be computed on the basis of forty (40) hours per week or the employee’s basic work week if difference at his regular rate of pay.
.Years of Continuous Weeks of Service Pay
1_'. — - 1
2--2
3-3
4- 4
5- S
6--6
7 — - 7
8-8
9-- — . 9
10 — __10
11 and over, add to V/2 10 weeks’ pay for each year of continuous service above ten (10) years.
Example:
12 years of continuous service: First 10 years’ continuous service — 10
Service over 10 years (12-10) or 2 x li/á--— -_3
Total Separation Allowance-13
To the separation allowance computed as per the example, add vacation pay *511 for the current calendar year if the employee has qualified for but not taken such vacation.
“ ‘(d) Payments — The amount due under the policy shall be paid as follows:
“ T. If less than the equivalent of four (4) weeks’ pay — in one lump sum.
“ ‘2. Amounts over a total of four (4) week’s pay — weekly installments of full wages until the total amount is exhausted. The employee may, at his option, elect to receive such amount in a shorter period of time or in one lump sum.
“ ‘3. In the event of death, any unpaid balance shall be paid to the widow or dependents.
“ ‘(e) Employees accepting separation allowance under this paragraph have no further rights or service credit until this Master Agreement.’
“Swift & Company was legally obligated, under the provisions of the collective bargaining agreement and especially Section 71 quoted above, to make the severance or dismissal payments in this instance. A majority of the courts have concluded that termination allowances, severance or dismissal payments which the employer was contractually required to make are deemed ‘wages’.
“ ‘It also is clear that the separation allowance comes within the definition of the “term” wages as contained in C.R.S.1953, 82-1-3(12) above quoted, since the allowance, which is based upon length of service and weekly wage, is an obligation which the employer is legally bound to pay under the terms of the union contract.’
“ ‘Industrial Commission of Colorado v. Sirokman [134 Colo. 481], 306 P.2d 669 (1957) ; Western Union Tel. Co. v. Texas Employment Com’n [Tex.Com.App.], 243 S.W.2d 217 (1951); Kroger Company v. Blumenthal, 13 Ill.2d 222, 148 N.E.2d 734 (1958); Bradshaw v. California Employment Stab. Com’n [46 Cal.2d 608], 297 P.2d 970 (1956); contra, Meatkins [Meakins] v. Huiet, 100 Ga.App. 557, 112 S.E.2d 167 (1959); Dubois v. Maine Employment Security Commission, [150 Me. 494], 114 A.2d 359 (1955).’
“This court is of the opinion that the Board of Review was in error by concluding that these severance payments were not ‘wages’ within the contemplation of the above quoted provisions of the Louisiana Employment Security Law. The application of the above quoted provisions lead this court to the conclusion that these separation allowances were ‘wages’ since the petitioner was legally required to pay them.”
“Having concluded that these severance payments are ‘wages’, the next question to be decided is what period or periods the ‘wages’ (severance payments) were paid ‘with respect to’. R.S. 23:1472(19) provides as follows:
“ ‘ “Unemployment”. — An individual shall be deemed to be unemployed in any week during which he performs no services and with respect to which no wages are payable to him, * * * ’
This case turns upon the interpretation of the words ‘with respect to’ as used in the above statutory provision. In other words, what was the severance pay for? Was the severance pay made to relieve the employer, indirectly, for a loss that it may sustain as a result of making contributions to the Unemployment Compensation Fund if benefits were allowed to the claimants under the Statute for the period of unemployment following their discharge, or was the severance pay meant to compensate the claimants for the loss of seniority rights, benefits of the hospitalization, surgical, medical and diagnostic insurance, death benefits available to the employees’ dependents, and all the other rights, credits and privileges as set forth in the bargaining contract which *512 accrued to them over the period of time that they had served their employer?
“The employer, Swift & Company, was under a contractual obligation to pay the severance pay and in compliance with the terms of that contract it did pay without question. In doing so, the employer was discharging the existing contractual obligation and the payments, irrespective of how regarded, represent the performance of that obligation. It is unequivocally established that the payments in the form of severance payments, completely served the claimants’ relationship with the employer. Section 71 of the contract provides as follows:
“ ‘Employees accepting separation allowance under this paragraph have no further rights or service credit under this master agreement.’
Upon payment of severance allowances, the employee is free to seek other employment if he so desires. It is not contended that in the event the employee would subsequently become employed by the Swift & Company or any other employer, that he would be under a duty to refund any of the severance pay previously allowed him. On the contrary, he could retain the severance pay and any employment subsequently obtained. It is admitted that the claimants performed no services during the period subsequent to their discharge from Swift & Company. Having performed no services during such period, no wages could be payable to them ‘with respect to’ that period. Therefore, the wages in the form of severance payments must be applicable to some period ‘with respect to’ which and during which they did perform personal services for Swift & Company.
“As each claimant performed a days service, he not only earned his wages for that day, but he was earning other contractual remuneration in the form of rights, privileges and benefits and if those accumulated rights, privileges or benefits were terminated by discharge, he would be paid a severance allowance for the loss of them. The more day's, the more years of continuous service the employee discharged, the more rights, privileges and benefits would he accumulate (seniority rights, for example). It logically follows, then, that the severance allowance would likewise increase to replace the accrued loss upon termination. This severance payment is made in accordance with the provisions of the bargaining contract and a reading of that agreement as a whole leads this court to the conclusion that these severance allowances were not related to future consideration, but were made solely to remunerate the claimants for their loss of the accumulated rights, benefits or credits which had accrued to them by reason of their length of service and its quality. The stipulation that the amount is to be ascertained by a certain number of weeks pay does not denote that these weeks of pay were ‘with respect to’ the period of time subsequent to employment. That is merely a convenient method of computing the separation allowances.
“To hold that these severance payments were made ‘with respect to’ a period of time following the discharge of the employee would be a judicial amendment to a clear and unambiguous contract. Such a holding would further amount to judicial legislation in view of the clear legislative expression set out heretofore. If the parties to the contract had agreed and intended that severance payments shall be allocated to the period of time following employment, it would be no difficult problem to insert that provision in the contract. Further, if the legislative intention had been that severance payments of this type would be allocated to a period of time subsequent to discharge from employment, it would have so expressed itself. Until the Legislature does so, this court is without any authority to interpret the clear provisions of this act to that effect.
“It is urged that an award of unemployment compensation under these circumstances would violate the declaration of public policy of the Louisiana Employment Security Law as set out in R.S. 23:1471:
*513 “‘As a guide to the interpretation and application of this Chapter, the public policy of this state is declared to he as follows: Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state. Unemployment is therefore a subject to general interest and concern which required appropriate action by the Legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security required protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this state require the enactment of this measure, for the compulsory setting aside of unemployment reserves to be used for the benefit of unemployed persons.’
“The preamble quoted above unquestionably reiterates the dark picture of the instability of our economy during the period of time in which that preamble was first enacted, that is 1936. At the same time, it is of the utmost importance to note that the law does not prescribe economic necessity or need as a qualifying condition requisite to becoming a beneficiary of unemployment compensation. It does not disqualify nor render ineligible any one who possesses means of support or one who has been otherwise provided with support during a transition period of employment, nor does it provide that one who has received separation allowances shall be ineligible to receive the benefits. The Act makes certain provisions setting out the condition under which a person may be ineligible, but the conditions urged by Swift & Company are not among them.
“It is further urged that to allow unemployment compensation payments under these circumstances would amount to a ‘double payment’. A double payment could only exist where the payments are for the same thing, same period of time, same consideration, same scope and nature. For the reasons previously set forth the severance payment is not paid for the same thing, the same period of time nor is it within the scope arid nature of unemployment benefits. This severance pay is an additional remuneration paid to the employee as a result of the contract in addition to what-ei er benefits he may receive under the Louisiana Employment Security Law. Such an additional payment as a result of an agreement, voluntarily entered into by the employer and paid according to the provisions of that agreement, in no way violates the spirit nor the letter of the Louisiana Employment Security Act.
“This court’s attention is called to the case of Southern Bell Telephone and Telegraph Company vs. Administrator and Thelma M. Smith, No. 16,228, recently rendered by the 22nd Judicial District Court of Louisiana. The facts of the Smith case, as set out in the brief of counsel for Swift & Company, appear to be similar to the instant case. This court does not have access to the contract involved there, but assuming that the provisions of the contract were substantially the same as the one in this suit, for the reasons heretofore set forth, I respectfully disagree with my learned brother’s conclusion that unemployment compensation payments, in addition to the severance payments, would amount to ‘being paid twice for the same job.’
“For the reasons set forth herein, the severance pay received by the claimants in these cases is deemed to be ‘wages’ within the pervue of the Louisiana Employment Security Act. However, the claimants are *514 deemed to be ‘unemployed’ following their termination of employment on April 22, 1960, since the wages received by them were received with respect to the period of time of their employment which was prior to April 22, 1960. The order of the Board of Review is thus amended and affirmed.”
For the reasons set forth above, the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.