READY MIX CONCRETE, INC., recurrente, *v.* COMISIÓN INDUS-
TRIAL DE PUERTO RICO, demandada.

*Número:* CI-64-14          *Resuelto:* 12 de marzo de 1965

38

*Omar Cancio Sifre,* abogado de la recurrente; *Donald R. Dexter,* abogado del Fondo del Seguro del Estado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El administrador del Fondo del Seguro del Estado procedió a hacer una reliquidación de la póliza de la recurrente Núm. 17,186 para los años 1955–56 a 1960–61, ambos inclusive, cobrando primas adicionales por la cantidad de $19,724.10, [1] por entender que los *pagos hechos* por la recu-

---

[1] Las imposiciones adicionales se desglosan de la forma siguiente:

| Años | Cantidad |
|---|---|
| 1955–56 | $2,380.61 |
| 1956–57 | 2,850.60 |

rrente a sus empleados *por concepto de vacaciones y licencias por enfermedad* están sujetos a tasación para determinar la prima del seguro a pagarse.

La recurrente procedió a pagar la referida cantidad e informó al Administrador su disconformidad con la reliquidación, por entender que el pago de las referidas primas adicionales no estaba basado en una determinación de derecho correcta. Como sostén de su posición la recurrente consignó que la reliquidación antes expresada se basa únicamente en pagos hechos a los empleados por concepto de vacaciones y licencias por enfermedad, tiempo en que los empleados no constituían *riesgo* de clase alguna por no estar trabajando y, por consiguiente, no tenían derecho a los beneficios que provee la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. secs. 1 *et seq.*

Después de una serie de comunicaciones entre la recurrente y el Administrador, procedió éste a declarar sin lugar los planteamientos de aquélla.

No conforme con esa decisión procedió la recurrente a apelar de la misma ante la Honorable Comisión Industrial, la que con fecha de 30 de junio de 1964, desestimó la apelación interpuesta confirmando la decisión del Administrador.

En dicha apelación la recurrente alegó, además, que siendo conflictivas las disposiciones de la ley y la política pública que informa el referido estatuto con la Sec. 19–4 del Reglamento, 11 R.&R.P.R. sec. 19–4, esta última es nula y sin validez legal, constituyendo la actuación del Administrador un ejercicio ultra-vires del poder gubernamental.

El 6 de julio de 1964 radicó la recurrente ante la Comisión recurrida, una solicitud de reconsideración de su resolu-

| | |
|---|---|
| 1957–58 | 2,635.08 |
| 1958–59 | 3,407.65 |
| 1959–60 | 4,048.42 |
| 1960–61 | 4,401.74 |
| | $19,724.10 |

ción del 30 de junio, la cual fue declarada sin lugar el 16 de julio del mismo año.

Expedimos el presente auto para revisar las actuaciones de la Comisión.

Como primer error señala la recurrente, que erró la recurrida al no decidir que la Regla IV, inciso 5 del Boletín Núm. 8 para gobernar el Seguro de Compensaciones por Accidentes del Trabajo, 11 R.&R.P.R. sec. 19–4, [2] es nula por estar en conflicto con la ley y la política pública que informa la misma, y por ser la actuación del Administrador, al aprobar el inciso 5to. del referido reglamento, un ejercicio indebido del poder gubernamental.

(1–2) El desarrollo histórico de la legislación en Puerto Rico referente a compensación por accidentes del trabajo refleja, quizás, la más clara idea de cuál fue la intención legislativa en lo referente a la determinación de la base para el cómputo anual de las primas

El Art. 25 de la Ley Núm. 45 de 18 de abril de 1935 expresaba en su segundo párrafo que el Administrador estaba facultado para tasar e imponer cuotas anuales determina-

---

[2] "Sec. 19–4. Base para la prima

(a) .       .       .       .       .       .       .       .

(b) .       .       .       .       .       .       .       .

(c) .       .       .       .       .       .       .       .

(d) .       .       .       .       .       .       .       .

(e) Cuando los empleados sean remunerados total o parcialmente con bonificaciones, comisiones, o sobre la base de tareas, o cualquiera otra base que no sea el tiempo realmente invertido en trabajar, o con vales, mercancías, créditos, o cualquier sustituto de dinero, tal forma de pago será considerada como salario o parte del mismo y se incluirá en la remuneración realmente devengada e informada al tiempo de computar la prima de la póliza. El informe de la remuneración incluirá los salarios adicionales por todo trabajo realizado en horas extras, salarios pagados en días festivos, y durante período de vacaciones, o enfermedad; pero no incluirá, sin embargo, recompensa especial por trabajos meritorios de descubrimientos, ni meras gratificaciones, ni el resultado de arreglos voluntarios para la distribución de beneficios, a menos que formen parte del contrato de servicios."

das con arreglo al precedente artículo sobre el *importe total de jornales pagados* por dicho patrono.

Posteriormente y por virtud de la Ley Núm 160 de 9 de mayo de 1942, el referido precepto fue enmendado, usándose como base para computar las cuotas anuales, *además del importe total de jornales* pagados por el patrono a sus obreros, contenida en la anterior ley, los *sueldos y otras remuneraciones* pagadas a los empleados anualmente.

Fue la intención legislativa en la referida enmienda el *ampliar* la base a usarse para el cómputo anual de las cuotas o primas incluyendo en ella *toda otra remuneración devengada* por el obrero y pagada por su patrono.

■ Las cortes deben gran consideración y respeto a las actuaciones, interpretaciones y reglamentos administrativos, al resolver significados dudosos en las leyes, *especialmente cuando dichos reglamentos han sido aprobados contemporáneamente a la aprobación del estatuto*, y han estado en vigor por largo tiempo. *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914 (1945) ; *Brugal & Co.* v. *Buscaglia, Tes.*, 64 D.P.R. 903 (1945) ; Bernier, *Aprobación e Interpretación de las Leyes de Puerto Rico*, 223; Sutherland *Statutory Construction*, 310 (3ra. ed.). No creemos, que el hecho de que el Reglamento para regular la Administración del Fondo del Seguro del Estado haya sido aprobado dos meses después de la antedicha Ley Núm. 160 de 1942, [3] milite en contra de la aplicación a este caso, de la antes mencionada doctrina jurisprudencial. *Brugal & Co.* v. *Buscaglia, Tes.*, supra.

La fuerza persuasiva de la referida doctrina cobra mayor vigor en una situación donde, como en este caso, la Legislatura ha enmendado y reenactado varias veces el estatuto [4] sin hacer cambio substancial alguno a los artículos en cues-

---

[3] Aprobado, firmado y promulgado por el Gobernador en 1 de julio de 1942.

[4] Enmendado en 14 de mayo de 1943, Núm. 162, pág. 525, Art. 1; 24 de junio de 1960, Núm. 96, pág. 273, ef. junio 24, 1960; 24 de julio de 1952, Núm. 6, pág. 11; 26 de junio de 1959, Núm. 88, pág. 259, Sec. 1.

tión, después de tener conocimiento de dicho reglamento administrativo. *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, supra.

No es lógico pensar que haya sido la intención legislativa el crear una norma inflexible de tasación. Por el contrario, se establecieron reglas flexibles con las cuales el organismo administrativo pudiera adoptar reglamentos para evaluar razonable, justa y equitativamente la capacidad del obrero para devengar ingresos, con el propósito, no sólo de imponer la prima patronal, si que también, para fijar la compensación del empleado al sufrir un accidente compensable, haciendo así menos precaria su situación económica. *Gene Autry Productions* v. *Industrial Commission*, 195 P.2d 143.

Nada hay en las disposiciones específicas de la Ley, ni en la política pública que la misma informa, que sea contrario o esté en conflicto con la Regla IV, inciso 5to. del referido Reglamento. El administrador, en virtud del poder concedídole por ley[5] y con el propósito de interpretar ejecutivamente, y así esclarecer los Arts. 19, 25, 26 y 27 de la referida Ley (11 L.P.R.A. secs. 20, 26, 27 y 28) optó por promulgar el Reglamento aquí cuestionado, concediéndole a la frase *"la suma total de jornales, sueldos y otras remuneraciones pagadas por el patrono"*, contenida en los Arts. 25 y 26, antes citados, una interpretación que está en consonancia, no sólo con los propósitos de la ley[6] y su desarrollo histórico, si que también la interpretación judicial mayoritaria del concepto y naturaleza jurídica de las licencias por enfermedad y las vacaciones. *Hilton Hotels* v. *Junta Salario Mínimo*, 74 D.P.R. 670 (1953); *P.R. Auto Corporation* v. *Tribl. de Distrito*, 73 D.P.R. 337 (1952); *In re Wil-Low Cafeterias*, 111 F.2d 429; *Panther Creek Mines* v. *Murphy*, 60 N.E.2d 217; *Swift & Co.*

[5] Apartado 13, párrafo 8vo. del Art. 6 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 8).

[6] El Art. 23 de la Ley impone al administrador la obligación de cobrar cuotas suficientes para mantener un fondo solvente y crear una reserva razonable.

v. *Brown*, 132 So.2d 508; *Shelly* v. *National Carbon Co.*, 184 S.W.2d 686; *Keane* v. *Aetna Life Ins. Co. of Hartford, Conn.*, 91 A.2d 875; 2 Lab. L.J. 742; 56 C.J.S. 526 sec. 96.

■ Además en nuestra decisión de *Monllor & Boscio* v. *Comisión Industrial*, 89 D.P.R. 397 (1963), aunque en dicho caso no se atacó directamente la validez constitucional del cuestionado reglamento, consignamos que dicho cuerpo legal tenía fuerza de ley.

Así no existiendo conflicto alguno entre la disposiciones estatutarias, la política que informaron las mismas y la reglamentación administrativa; *Alemañy* v. *Comisión Industrial*, 64 D.P.R. 888 (1945); *Ex Parte Irizarry*, 66 D.P.R. 672 (1946); habiéndose promulgado el reglamento dentro de los poderes conferidos por ley al Administrador, *Monllor & Boscio* v. *Comisión Industrial*, supra; 11 L.P.R.A. sec. 8; siendo sus disposiciones razonables; y habiéndose promulgado de acuerdo con el procedimiento establecido, debemos declarar válidas y obligatorias sus disposiciones, que en este caso consideramos. Davis, *Administrative Law Text*, sec. 503, pág. 87.

(3) A pesar de que lo hasta aquí considerado sería suficiente para anular el auto por nosotros expedido, consideramos deseable discutir los otros errores planteados por la recurrente.

Arguye la recurrente que, no siendo compensables los accidentes que sus empleados sufran durante los períodos de vacaciones y licencias por enfermedad, tampoco deben ser tasables los pagos que durante tales períodos ella les hiciese; que durante tales períodos los empleados no están sujetos a riesgo alguno; y que la base para computar la aportación patronal al fondo debe ser por remuneraciones hechas por *servicios prestados*.

■ Como regla general, los accidentes sufridos por los empleados, durante los períodos de licencias por enfermedad y vacaciones no son compensables, por no surgir durante el

curso del empleo. Campbell, *Workmen's Compensation*, Vol. I, pág. 136; Schneider, *Workmen's Compensation*, Vol. 7, pág. 429; *Continental Cas. Co.* v. *Industrial Commission*, 238 N.W. 368; 78 A.L.R. 679. Sin embargo, pueden surgir situaciones donde, a pesar de ocurrir el accidente en el período de vacaciones, el accidentado tenga derecho a compensación, por razón de haber realizado durante tal período, o al comenzar o terminar el mismo, actividades en beneficio de su patrono, surgiendo así el accidente durante el curso del empleo. *Irvin Neisler & Co.* v. *Industrial Commission*, 178 N.E. 357; *Standard Oil Co.* v. *Smith*, 111 P.2d 132; *Messer* v. *Manufacturers Light & Heat Co.*, 106 Atl. 85; *Aetna Life Ins. Co.* v. *Schmiedeke*, 213 N.W. 292.

Por otro lado, el argumento de falta de riesgo de la recurrente, parte de la premisa falsa de que todos los empleados toman o disfrutan sus períodos de vacaciones, cuando lo cierto es, que muchas veces, la práctica es *pagarlas en dinero*, ya, por las necesidades económicas del empleado, ya, porque la capacidad de actividad comercial o industrial, por la falta de obreros diestros o porque la naturaleza del empleo exigen su presencia constante. *P.R. Auto Corporation* v. *Tribl. de Distrito*, supra.

■ Sin embargo, el que sea o no compensable un accidente de trabajo surgido durante los períodos de licencias por enfermedad o vacaciones, no es base para de ahí partir a aseverar que por tal razón, no deben ser tasables los pagos hechos a los empleados durante tales períodos. La tasación se hace por pagos hechos como remuneración a *servicios prestados* por los empleados a sus patronos. El hecho de que se pague durante un período en que el empleado no esté trabajando porque está descansando, o porque está enfermo, no quiere decir que él no ha prestado servicios equivalentes a esos pagos. Lo que se ha hecho es *diferir* ese pago. Así en el caso de *Keane* v. *Aetna Life Ins. Co. of Hartford, Conn.*, supra, se dice:

"El pago por despido y el pago por vacaciones *son devengados*. Dependen del *quantum de servicios prestados.* El hecho de que para otros propósitos, como por ejemplo, en las negociaciones colectivas, las partes clasifiquen tales pagos como beneficios marginales, no destruye de por sí la afinidad entre tales pagos y el trabajo realizado, y, por tanto, su adecuada inclusión dentro del término genérico de *jornales*". (Traducción nuestra.)

■ Aunque la legislación laboral vigente no concede a los obreros el derecho a disfrutar de vacaciones, éstas pueden surgir de un decreto mandatorio, de un convenio colectivo o de un contrato privado entre las partes. (⁷) *Peralta Cáceres* v. *Peninsular Life Ins. Co.*, sentencia de 4 de junio de 1964, Ref. Col. Abog. Núm. 104; *Hilton Hotels* v. *Junta Salario Mínimo*, supra. Una vez consignados tales beneficios en los referidos cuerpos legales constituyen derechos exigibles ante los tribunales; y si no se conceden o se disfrutan es deber del patrono pagarlos en dinero. *P.R. Auto Corporation* v. *Tribl. de Distrito*, supra.

■ Por las consideraciones antes consignadas decidimos que fue correcta la decisión de la Comisión recurrida, al considerar los pagos hechos por concepto de vacaciones y licencias por enfermedad, como *salarios adicionales* sujetos a tasación para la imposición anual de las primas. Anno: *Vacation Pay Clause*, 30 A.L.R.2d 351; *In re Wil-Low Cafeterias*, supra; 56 C.J.S. 526, sec. 96; *Sokalaff* v. *New York State Dept. of Labor, etc.*, 192 N.Y.S.2d 588; *Knaszak* v. *Buffalo Forge Company*, 225 N.Y.S.2d 600; *France* v. *City of New Orleans*, 92 So.2d 472.

*Por las razones expuestas debe anularse el auto expedido.*

---

(⁷) Pueden surgir también por concesiones o actos de benevolencia patronal con el propósito de dar mayor incentivo, no siendo en tales situaciones exigibles en derecho. Que la costumbre de concederlas cree una esperanza (*expectancy*) en el obrero y podamos aplicar a ellas la teoría consignada para los bonos en el caso de *Monllor & Boscio* v. *Comisión Industrial,* supra; *quaere.*