HELEN M. ACKERSON v. WESTERN UNION
TELEGRAPH COMPANY.
VIRGINIA B. HINRICHS v. SAME.
VICTOR CHRISTGAU, RESPONDENT.[1]

June 1, 1951.

Nos. 35,432, 35,433.

---

[1]Reported in 48 N. W. (2d) 338.

*Coursolle, Preus & Maag, Robert C. Barnett,* and *J. A. C. McGann,* for relator.

*J. A. A. Burnquist,* Attorney General, *K. D. Stalland,* Assistant Attorney General, and *George W. Olson,* for respondent director.

*Harvey M. Thor,* Chairman, Labor Relations Committee, Local No. 9, Commercial Telegraphers' Union, Western Union Division, for respondents Virginia B. Hinrichs and Helen M. Ackerson.

KNUTSON, JUSTICE.

Certiorari to division of employment and security to review a decision of the director allowing unemployment benefits to respondents.

The facts are not in dispute. Relator maintains a nationwide communications service. Prior to World War II, relator determined that in order to operate profitably and meet competition it was necessary to mechanize its transmitting and receiving operations. The war delayed the program, but upon cessation of the armed conflict the program of mechanization was again taken up and carried through to completion.

Realizing that mechanization would result in the elimination of jobs for many of relator's employes, the latter, bargaining through the American Federation of Labor, Commercial Telegraphers' Union, procured a provision in a contract entered into under date of July 1, 1949, which gives certain alternative benefits for displaced employes who would be affected by such mechanization. Section 23.02 of article 23 of the contract provides, among other things, that where a major change in operating methods involves displacement of personnel the affected employe shall have the option of:

"(a) Acceptance of pension, if eligible.

"(b) Acceptance of severance pay as hereinbelow outlined.

"(c) Acceptance of transfer to another office or major department as hereinbelow outlined. The offices in which this option is to be exercised shall be a subject for negotiation during the 60-day period mentioned above, at the division level for transfers within the division and at the national level for interdivision transfers.

"(d) Acceptance of work in a lower class of work.

"(e) A force-reduction furlough as hereinbelow outlined."

Section 23.03 of article 23 provides in part:

"With respect to Subsection (b), (c) and (e) in Section 23.02 above, the procedure shall be as follows:

"(a) Severance pay. Any employee who has, or who will have, two years or more of company service sometime during the year in which the conversion is effected may choose to be paid a lump sum separation allowance. The separation allowance shall be determined on the basis of four weeks' pay at the regular rate of the position last occupied, for every year of service, and two days' pay for every month in which the employee worked in any period remaining that is less than a full year. *The acceptance by an employee of a lump sum separation allowance under this proviso terminates his service with the Company.*" (Italics supplied.)

Claimant Hinrichs was employed by relator from March 1944 to February 24, 1950, as an automatic operator in relator's automatic department. She lost her employment as a result of the mechanization of the operations in which she had been employed. She elected to accept severance pay and was paid $1,123.20, computed on the basis of 24 weeks at the rate of $46.80 per week, which was based on six years' service as computed under the terms of the contract.

Claimant Ackerson was employed in a similar capacity from August 1944 to February 26, 1950. She likewise lost her employment and elected to receive severance pay. Based on five years and seven months' service, she received severance pay, as computed under the contract, in the sum of $1,067.04.

Each of these claimants filed claim for benefits under our unemployment compensation act on February 27, 1950. The local office

denied the claims. The appeal tribunal, after a hearing, held that they were entitled to benefits, and, on appeal, the director affirmed.

It is the contention of relator that severance payments were intended to cushion the shock of separation from employment and should be allocated over the number of weeks from the date of separation which had been used in computing the amount payable. In other words, in the case of claimant Hinrichs, relator contends that the severance pay should be allocated over 24 weeks from the date of separation in lieu of wages which would have been earned during that period had she worked. Of course, if that theory of severance payments is adopted, claimant would be ineligible for unemployment compensation until the expiration of the period over which the severance payment is so allocated.

The case is one of first impression, and so far as we have been able to determine no court of last resort has passed on the question. Employment and security divisions of several states have passed on the matter, but have not arrived at the same conclusion.[2]

The case involves primarily a construction of the following statutory provisions. M. S. A. 268.04, subd. 23, which reads:

" 'Unemployment'—An individual shall be deemed 'unemployed' in any week during which he performs no service *and* with respect

[2]The employment and security divisions of the following states have apparently held that such severance payments should be considered as wages in the future from the date of separation and that the employe is ineligible for benefits until the expiration of the number of weeks for which payment was so made: *California* (App. Bd. Ben. Dec. No. 5256-9459 [1949], briefed in par. 8605.02, 2 CCH Unemp. Ins. Rep. p. 8654); *Florida* (Barrett v. Western Union [1950] App. Ref. Dec. No. 5383, Dkt. 7995, briefed in par. 8109.12, 3 CCH Unemp. Ins. Rep. p. 13,535); *Massachusetts* (Dec. Bd. of Rev. [1948] 13149-Mass. R, Ben. Ser. Vol. 12/2*); (MacDonald v. Western Union, Dec. Bd. of Rev. September 1, 1950); *Pennsylvania* (Bd. of Rev. Dec. [1946] No. B-6699, App. No. B-44-99-E-1803, briefed in par. 1995, 6 CCH Unemp. Ins. Rep. p. 41,279); *Indiana* (Rose v. Western Union Tel. Co. [1949] Claim No. 70-237145); *Kansas* (Evans v. Western Union Tel. Co. [1949] App. No. 10410); *Maine* (Mc-Nulty, Claimant [1948] Dec. No. 48-AD-1037); *Maryland* (Myers v. Western

to which no wages are payable to him, or in any week of less than full time work if the wages payable to him with respect to such week are less than his weekly benefit amount. The director may, in his discretion, prescribe regulations relating to the payment of benefits to such unemployed individuals." (Italics supplied.)

Subd. 25, which reads in part as follows:

" 'Wages' means all remuneration for services, employment, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, except that such term shall not include:

\* \* \* \* \*

"(4) Dismissal payments which the employer is not legally required to make;"

Section 268.08, subd. 3, which so far as here material reads:

"An individual shall not be eligible to receive benefits for any week with respect to which he is receiving, has received, or has filed a claim for remuneration in an amount equal to or in excess of his weekly benefit amount in the form of

"(1) dismissal payment or wages in lieu of notice whether legally required or not; or

"(2) vacation allowance; \* \* \*

\* \* \* \* \*

"Provided, that if such remuneration is less than the benefits which would otherwise be due under sections 268.03 to 268.24, he

---

Union Tel. Co. [1949] App. No. 43259, Dec. No. 5356); *Tennessee* (Himes v. Western Union, Doc. 6108, 50-BR-164). Contra: *North Dakota* (Dec. App. Ref. [1949] 13871-N. D. A, Ben. Ser. Vol. 12/11\*); *Texas* (Dec. App. Ex. [1949] 13965-Tex. R, Ben. Ser. Vol. 12/12\*); *Illinois* (Dec. Bd. of Rev. [1940] 5832-Ill. R, Ben. Ser. Vol. 4\*); *Oklahoma* (No. 545-AT-49 Okla. A, TPU-460.35-1, 3 CCH Ben. Ser. Serv. Unemp. Ins.) (compensation denied on other grounds).

\*Unemployment Compensation Interpretation Service, Benefit Series, is a publication of the Social Security Board containing precedent unemployment compensation decisions from the various states. See, 55 Yale L. J. note, p. 117.

shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration; provided, further, that if the appropriate agency of such other state or the federal government finally determines that he is not entitled to such benefits, this provision shall not apply."

Section 268.04, subd. 23, provides that an individual shall be deemed unemployed in any week in which he performs no service *and* with respect to which no wages are payable to him. It is clear that, from the use of the conjunctive "and," before an individual may be deemed to be unemployed, two things must exist: (1) He must perform no service during the week; and (2) he must be paid no wages for the week. In the case now before us, the first of those requirements clearly exists. Upon election to receive severance pay, the employment was completely severed. No claim is made that other employment was obtained. The employe was registered for work. So far as her former employer was concerned, she could do as she pleased from the date of separation. Relator claims, however, that the second prerequisite to "unemployment" is lacking, in that severance pay constitutes wages for the number of weeks following the employe's separation which have been used to compute the amount thereof. In the case of claimant Hinrichs, relator contends that she has been paid for 24 weeks following her separation; hence, that she will not be unemployed within the statutory definition of that term until the expiration of such period of time.

The history and legislative purpose of our unemployment act is discussed in Bucko v. J. F. Quest Foundry Co. 229 Minn. 131, 38 N. W. (2d) 223, and Nordling v. Ford Motor Co. 231 Minn. 68, 42 N. W. (2d) 576, and we need not repeat what was said there. Suffice to say that it is the declared public policy of our state, as shown by the legislative declaration of public policy in the act (§ 268.03), that benefits are intended to extend to those who are unemployed through no fault of their own.

Fazio v. Unemployment Compensation Board of Review, 164 Pa. Super. 9, 63 A. (2d) 489, which is relied upon by relator, is dis-

tinguishable on its facts from the case now before us. In that case claimant, who had been employed for ten years as superintendent of the company, was released on February 3, 1947, because of a change in management. He was given a check equivalent to his February and March salary, although the company was under no legal obligation to make such payment. On February 4, 1947, he filed his claim for unemployment compensation. The court held that claimant, having received remuneration for the months of February and March, was not entitled to benefits until the expiration of the time for which he had been so paid. In the case now before us, relator was not only legally obligated under its contract to make the severance payments upon the election of the discharged employes to receive them, but the payments were not designated as wages for a specific future period of time, as was done in the Fazio case.

The appeal tribunal held that severance pay represented payment for services rendered in the past. Its opinion states:

"The claimant, under the contract, performed services for the employer herein for which she received a certain wage and, in addition thereto, she began to establish a credit or fund to be paid her upon separation. This payment was, and is, based on services performed during a specific period of time, that is, from the date of hiring until the date of separation.

"* * * This payment was wages paid with respect to periods of employment prior to the separation and not with respect to any period subsequent to the separation, although the actual payment was of necessity made after the separation. * * * It [the severance payment] actually constitutes a delayed payment based on services performed prior to the date of the termination of employment and therefore the claimant should not be held ineligible for benefits because of the receipt of this sum."

It is doubtful if that reasoning is sound. If the employe had been discharged for cause, or had voluntarily resigned, or had died before separation, she would have received nothing. If, as the

appeal tribunal holds, she had earned this money and it had simply been held back, it is difficult to see how she would lose the right to collect it in case either of the above-mentioned events occurred. Then, too, if she had elected to avail herself of one of the other options mentioned in the contract, she would have received no severance pay. If it had been earned as past wages, it should have been payable in any event. Severance pay was not computed on the basis of the earnings of the employe over her years of service, or a percentage thereof, but was based on the rate of pay prevailing at the time of her separation, without regard to the fact that over the years her rate of pay may have changed from time to time. The contract for severance pay was entered into long after the employe's services began, so it cannot be said that upon the commencement of her employment she began to establish a credit or fund by the withholding of part of her earnings, which was to be paid to her upon separation. On the other hand, relator's contentions are grounded on equally untenable reasoning. Severance pay was in no way related to or dependent upon the employe's employment status after separation. She received the payment even though she might secure a job the next day. It is true that the amount was measured by the length of service, but there may have been many reasons for adopting the length of service as the yardstick in determining the amount of severance pay due a discharged employe. The type of work performed by claimants in this case was such that it was unlikely they could again procure work of a similar nature. Relator had virtually a national monopoly on the business. No other employer was likely to provide the discharged employes with an opportunity to use the skill acquired over these many years of service with relator. It is undoubtedly true that one of the objectives of dismissal or severance pay, such as we have to deal with here, is to ease the employe's financial burden while looking for a new job. However, there are other objectives which we must also keep in mind in considering the nature of such payment. Partial compensation for loss of seniority rights; loss of possible

pension rights; compensation for retraining or acquiring new skills; and many others could be mentioned.[3] Relator undoubtedly considered the desirability of retaining its trained personnel until the job of mechanization could be completed. It is reasonable to assume that in arriving at a contract by collective bargaining, under which relator became obligated to make such payments, it did so with full knowledge of the advantages to be gained by it in making such payments, without any strings tied to it, in return for the continued service of its employes until the time arrived when such services could be dispensed with.

Relator argues that to allow claimants to recover benefits under these circumstances is to penalize relator by imposing a double liability under the contract, namely, payment of severance pay, and the adverse effect it will have upon relator's contribution rate to the unemployment compensation fund. That may very well be true, but it strikes us that it is an argument which more properly should be addressed to the legislature than to the courts. Likewise, relator argues that payment of benefits gives the employe double benefits or double pay in allowing her to receive severance pay and at the same time collect unemployment benefits. That may or may not be true, depending upon the construction placed upon the nature of the severance pay. In any event, it is true, irrespective of the employment status of the employe after separation. If she procured a new position the day after separation, she would retain her severance pay and the wages so earned, and no one would contend that she should not be allowed to retain both. Unemployment compensation is merely intended to take the place of wages which could have been earned had she been employed.

Concededly, relator and its employes might have contracted to have the severance allowance paid in weekly installments over a period of time following separation and might thereby have prevented the employes from becoming eligible for benefits under the

[3]See, Vol. 70, No. 4, Monthly Labor Review, U. S. Dept. of Labor, Bureau of Labor Statistics (April 1950) p. 384.

unemployment compensation act, but it is sufficient to say that that is not what was done in this case.

We think that the director has arrived at the correct result, and his decision should be affirmed.

Affirmed.