**Ray H. BUSCH, Relator,**

v.

**RESERVE MINING COMPANY, Commissioner of Jobs and Training, Respondents.**

**No. C0–87–1219.**

Court of Appeals of Minnesota.

Nov. 17, 1987.

John Engberg, Minneapolis, for relator.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by POPOVICH, C.J., and RANDALL and STONE*, JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

BRUCE C. STONE, Judge.

Ray Busch appeals by writ of certiorari from a determination that he was ineligible to receive unemployment compensation benefits between December 1986 and February 1987 because he had received a pension payment covering those same months. We affirm as modified.

## FACTS

The facts are not in dispute. Relator Ray Busch worked for the respondent Reserve Mining Company ("Reserve") as a mechanical repairman until July 1986, when Reserve shut down its plant and laid off its employees. At that time, Busch was required to take two weeks of his accrued vacation, pursuant to the terms of a collective bargaining agreement between Reserve and Busch's union.

During the layoff, Busch applied for unemployment compensation benefits. Thereafter, he notified Reserve that he was retiring, and filed a claim with Reserve for his company pension. At the time he retired, he had accrued two additional weeks of vacation, which he had not taken.

On or about December 1, 1986, Busch received $4,878.88 from Reserve, pursuant to a "special payment" provision of the pension agreement between Reserve and Busch's union. The issue in this case turns solely upon whether this special payment should reduce Busch's unemployment compensation benefits and, if so, for how many weeks his unemployment benefits should be reduced.

The special payment provision states:

The Special Payment is the payment for the first three full calendar months following the month in which retirement occurs, * * *. It is a lump sum equal to 13 weeks of vacation pay * * *, reduced by any regular vacation pay received for the year of retirement * * *. Under the basic labor agreement a participant entitled to vacation which he has not taken by the time of retirement does not receive that vacation or vacation pay if he

is eligible for the Special Payment, but no deduction will be made from the Special Payment for such vacation. * * * For each month to which the Special Payment does not apply, the pension is the Regular Pension.

\* \* \* \* \* \*

The special payment shall be payable for the first three full calendar months following the month in which retirement occurs. Such special payment shall be made in a lump sum within the first full calendar month following the month in which retirement occurs or within the month following the month in which application for pension is made, whichever is later.

In accordance with such agreement, when Busch retired, he received a special payment of 13 weeks of vacation pay less the two weeks of vacation pay that he had been required to take during the plant shutdown. His total special payment therefore consisted of vacation pay for 11 weeks—the two weeks of vacation pay which he had accrued, but not used, plus nine weeks of additional vacation pay. Nevertheless, pursuant to the above agreement, Busch's special payment was allocated to the first 13 weeks (i.e., three full calendar months) following his retirement.

The Department of Jobs and Training determined that because Reserve had allocated Busch's special pension payment to the 13 weeks following his retirement, Busch was therefore ineligible to receive unemployment compensation benefits during that entire period. Busch has appealed to this court.

## ISSUE

Did the Commissioner err by determining that the special pension payment should offset Busch's unemployment compensation benefits for the 13 weeks following his retirement?

## ANALYSIS

Minn.Stat. § 268.08, subd. 3 (1986) provides that unemployment compensation benefits must be offset by certain other benefits received during the same period of time:

An individual shall not be eligible to receive benefits for any week with respect to which the individual is receiving, has received, or has filed a claim for remuneration in an amount equal to or in excess of the individual's weekly benefit amount in the form of

(1) termination, severance, or dismissal payment or wages in lieu of notice * * *; provided that if a termination, severance, or dismissal payment is made in a lump sum, the employer may allocate such lump sum payment over a period * * * not to exceed 28 calendar days;

\* \* \* \* \* \*

(4) * * * pension payments * * *.

Busch argues that the above statute does not permit Reserve's allocation of his special pension payment over a period of time. Busch points to the fact that while allocation is specifically authorized by subdivision 3(1)—the provision governing severance pay—similar language does not appear in subsection (4), governing pensions; thus, Busch argues that his special pension payment may not be allocated.

Busch cites *Ackerson v. Western Union Telegraph Co.*, 234 Minn. 271, 48 N.W.2d 338 (1951) in support of his argument. *Ackerson* involved the receipt of a lump sum severance payment under a prior version of Minn.Stat. § 268.08, subd. 3(1). At that time, the statute did not expressly provide for allocation of severance payments. The parties' agreement in the *Ackerson* case stated:

Any employee * * * may choose to be paid a lump sum separation allowance. The separation allowance shall be determined on the basis of four weeks' pay at the regular rate of the position last occupied, for every year of service, and two days' pay for every month in which the employee worked in any period remaining that is less than a full year.

*Id.* at 273, 48 N.W.2d at 339.

The employer in *Ackerson* argued that its lump sum severance payments were intended to compensate an employee for, and

thus should be allocated over, the same number of weeks which were used to compute the amount of the separation payment.

The *Ackerson* court disagreed, holding that the severance payment could only be used to offset the employee's unemployment compensation benefits for the week in which the payment was actually received. Subsequently, the legislature revised the severance pay provision, allowing allocation of this type of lump sum payment over a limited period of time.

In revising the statute, the legislature did not also provide for allocation of lump sum pension payments. Thus, Busch argues that the legislature did not intend to allow the allocation of lump sum pension payments over a period of time to offset an employee's receipt of unemployment compensation benefits.

Reserve claims *Ackerson* is distinguishable, since there the contract did not allocate the lump sum severance payment to specific weeks, as Reserve did here with its lump sum special pension payment. We agree with this distinction, and note that the *Ackerson* decision itself suggests that if the parties' contract had specifically allocated the severance payments to a period of time following the employee's separation, the court might have upheld an offset of unemployment compensation benefits against severance payments for the same number of weeks. Distinguishing its facts from the case of *Fazio v. Unemployment Compensation Board of Review*, 164 Pa. Super. 9, 63 A.2d 489 (1949), the court stated: "the payments were not designated as wages for a specific future period of time, as was done in the *Fazio* case." *Ackerson*, 234 Minn. at 277, 48 N.W.2d at 341. Here, we conclude Reserve's agreement was specific enough to allow allocation.

We agree with the analysis of the California Supreme Court under similar facts:

Both under the terms of the pension agreement and in actuality, the special payment and the "regular pension" are components of a single integrated periodic pension plan. In effect, the special payment is the first installment of a pension whose regular monthly installments begin three months after retirement. The fact that the first interim payment is paid on a quarterly basis and is calculated differently does not suggest that it is a "pension paid on a lump sum basis" independent of a periodic pension which commences in the second quarter after retirement.

Further, a legislative distinction between pensions entirely paid in a single lump sum and pensions paid in "periodic payments" is rational, primarily because of the administrative and equitable difficulties inherent in attempting to prorate a lump sum pension over the remainder of a retiree's life for purposes of calculating a weekly unemployment benefit reduction. No such rationale justifies a distinction between this special payment and other periodic retirement payments. The special payment is allocated by the terms of the agreement to a specified, finite period. Indeed, in that it typically provides 13 weeks of pay for a 13-week period, the agreement itself provides an equitable formula for the allocation of the special payment.

*Evans v. Unemployment Insurance Appeals Board*, 39 Cal.3d 398, 418–419, 216 Cal.Rptr. 782, 793–794, 703 P.2d 122, 133–34 (1985).

Both parties cite a memorandum promulgated by the Department and which was never made a part of the record. While the Department's interpretation of its own statutes is entitled to consideration, such interpretation does not preclude a different construction by this court, since the object of all statutory interpretation is to ascertain and effectuate the intent of the legislature. *Steele County Building and Loan Association v. Commissioner of Taxation*, 263 Minn. 176, 116 N.W.2d 506 (1962); Minn. Stat. § 645.16.

In the alternative, Busch argues that his payment may only offset unemployment benefits for the 11 weeks actually represented by the payment. Here, Reserve provided that the lump sum should be allocated over 13 weeks, even though Busch's two weeks of vacation pay which

he received in July had already offset two weeks of unemployment compensation benefits for that time. In other words, Busch is deprived of receiving unemployment compensation benefits for 13 weeks, even though two of those 13 weeks consisted of vacation weeks which he had already been required to use when he was laid off. Thus, those two vacation weeks would actually offset four weeks of unemployment compensation benefits.

A similar issue was addressed in the Pennsylvania case of *Unemployment Compensation Board of Review v. U.S. Steel Corp.*, 19 Pa.Cmwlth. 595, 338 A.2d 786 (1985). There also, the employer's special initial pension was a lump sum amount calculated by multiplying the employee's weekly vacation pay rate for the year of retirement by 13 weeks and deducting the amount of any vacation pay which had been received for that year. There also, the employer argued that the employee's unemployment compensation benefits should be offset by the 13 weeks over which the employer had allocated the lump sum payment.

The employee in *U.S. Steel* had received four weeks of vacation pay during the year, and her special initial pension benefit was calculated by multiplying her weekly vacation pay rate by 13 weeks and then deducting the amount of annual vacation pay she had received for four weeks of vacation taken. The employee thus received a lump sum amount equal to nine times her weekly vacation pay rate.

The Pennsylvania court determined that the employee's lump sum special pension payment should be allocated over only nine weeks following her retirement, reasoning:

> An allocation of a sum equal to nine weeks pay over a 13 week period seems to us, * * * inconsistent with the realities and, as illustrated by a hypothetical case, illogical. If * * * [the employee] had been laid-off, and had then received four weeks vacation pay, such payments would have been offset against unemployment compensation * * *. Had she subsequently returned to work and then been involuntarily retired during the

same year, the allocation of the special initial pension payment over 13 weeks would result in only four weeks' vacation pay being offset against eight weeks of unemployment benefits to which she was entitled under the law.

*Id.*, 338 A.2d at 788. The hypothetical case cited by the *U.S. Steel* court describes the situation in the present case, and demonstrates the inequities of including the two weeks of vacation Busch had already taken in the 13 weeks offsetting his receipt of unemployment compensation benefits.

In Minnesota, an agreement to waive entitlement to unemployment benefits is void. Minn.Stat. § 268.17 (1986). We conclude that the implementation of the parties' agreement which would in effect allow two weeks of Busch's vacation pay to offset four weeks of unemployment benefits is not only unfair, but is also void. Therefore, the agreement must be interpreted to allow allocation of the special payment over the 11 weeks, rather than the 13 weeks, immediately following Busch's retirement.

### DECISION

Busch's unemployment benefits for the first 11 weeks following his retirement must be offset by his special pension payment received for that same period of time.

Affirmed as modified.