Brender A. **BLEDSOE**, Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES**, Respondent.

No. 87–745.

District of Columbia Court of Appeals.

Submitted June 23, 1988.
Decided July 25, 1988.

Brender A. Bledsoe, pro se.

Michael A. Milwee for respondent.

Before MACK, FERREN, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

In an unemployment compensation case sporadically enlivened by allegations of espionage and persecution,[1] in which petitioner Brender A. Bledsoe has phrased her challenge to her institutional adversaries in disarmingly earnest prose,[2] we are called upon to review a determination by the Department of Employment Services (DOES) that Ms. Bledsoe is not entitled to recover unemployment compensation benefits for the years 1979 and 1981. Although it is difficult to discern from a less than comprehensive record[3] the precise nature of events and conversations which occurred nine and seven years ago, we conclude that there is substantial evidence to support the agency's findings. Accordingly, we affirm.

I

Ms. Bledsoe's dispute with DOES first came to the attention of this court in connection with her unsuccessful application for unemployment compensation for the year 1984. In 1986, this court affirmed the denial of benefits for 1984 because Ms. Bledsoe's earnings during that year were insufficient to render her eligible. Ms.

Bledsoe had further alleged, however, that she had applied for compensation in 1979 and 1981 but had not received any payments, and the record disclosed that the agency had not satisfactorily addressed this aspect of the controversy. Accordingly, this court remanded the case to DOES for further proceedings to determine Ms. Bledsoe's rights with respect to the earlier years. *See Bledsoe v. District of Columbia Department of Employment Services,* No. 85–452 (D.C. September 23, 1986) (Memorandum Opinion and Judgment).

Following the remand, an evidentiary hearing was held before a DOES appeals examiner. After receiving testimony from Ms. Bledsoe and from two DOES officials and some limited documentation, the examiner found that Ms. Bledsoe was not entitled to compensation for either of the contested years. The examiner's ruling was affirmed in a Final Decision of the agency on June 29, 1987. It is from this Final Decision that Ms. Bledsoe now appeals.

The claims for 1979 and 1981 raise different issues and must be considered separately.

II

■ With respect to the year 1979, the parties agree that Ms. Bledsoe was monetarily eligible for compensation when she filed her claim in March of that year. According to the witnesses for DOES, however, Ms. Bledsoe failed to comply with the reporting requirements of the agency which were then in effect. Specifically, claimants were required at that time to report in person to the appropriate public employment office at least biweekly in order to establish continued eligibility for

1. In a letter to an official of the Department of Employment Services dated June 26, 1987, the petitioner wrote that an attempt had been made to terminate her services at one agency in response to allegations that she was "a spy." She also related that she was told by one of the secretaries that she should be careful because "they don't like people like you and they might do something to hurt you."

2. "Respondent has attempted to establish a perimeter which is iconoclastic in content which

would intimidate the Court's authority to examine DOES administrative procedure." Petitioner's Reply Brief, p. 9.

3. A DOES official testified before the Appeals Examiner that
   the computerized system we had in 1979 was not a very good system, and therefore it only showed the payments made. It did not show whether [Ms. Bledsoe] was disqualified.

benefits. *See* D.C.Code § 46–309(a) (1973);[4] 18 D.C.Reg. § 300.2(a) (1970) (as amended September 5, 1972). DOES contended, and Ms. Bledsoe acknowledged, that she did not report in person to the agency following the initial determination of eligibility in March.

Ms. Bledsoe testified that her reason for not reporting in person was that she was advised by a DOES employee, whom she could not identify by name, that she need not do so and that she would receive claim forms in the mail. The appeals examiner expressed apparent reservations about her testimony to this effect at the hearing,[5] and he rejected it in his Findings, evidently at least in part on the basis of his assessment of Ms. Bledsoe's credibility. There was testimony, and the examiner found, that the procedure for reporting by mail was not instituted until 1981, two years after the date in question. Moreover, an agency official testified that in 1979 claimants were provided with a brief pamphlet which specifically spelled out their obligation to report in person. The trier of fact could reasonably find it to be improbable that an agency employee gave instructions to an applicant which were completely at odds with the procedure which was in effect at the time, and could be understandably skeptical of a claimant's contrary recollection eight years after the fact. Moreover, even if such instructions had been given, Ms. Bledsoe would soon have been on notice that something was wrong when no checks arrived, and any subsequent inquiry would surely have secured the correct information.

Although loss of benefits by an otherwise eligible claimant might be deemed harsh where, as may have occurred here, there was some misunderstanding between the claimant and the agency, the courts have generally upheld determinations of ineligibility, and the consequent withholding of benefits, where claimants have failed to comply with reporting requirements. *See Dunn v. District of Columbia Department of Employment Services,* 467 A.2d 966 (D.C.1983); *Zinicola v. Unemployment Compensation Board of Review,* 47 Pa.Cmwlth. 154, 156–57, 407 A.2d 474, 475 (1979). Such requirements are reasonable and valid in light of the large number of claims presented and the need to monitor the eligibility of numerous applicants. *Nixon v. Catherwood,* 29 A.D.2d 895, 896, 287 N.Y.S.2d 970, 972 (3rd Dept.1968). By failing to report, an applicant avoids answering the common questions asked of all applicants regarding job search, school attendance, physical health, and interim earnings. Under these circumstances, determinations of ineligibility have been sustained where claimants have missed only a single appointment with the agency, *Nixon, supra,* even where they have immediately apologized. *Stanek v. Unemployment Compensation Board of Review,* 6 Pa. Cmwlth. 351, 295 A.2d 198, 199 (1972).

In the present case, any harshness of decisions like *Stanek* [6] is dissipated by Ms. Bledsoe's passivity for years after failing to receive compensation for which she was eligible. She testified, in explanation of her inaction, that

> I didn't just sit down and just wait for unemployment. I was working during these periods of time.

---

4. Now recodified as D.C.Code § 46–110(1) (1981).

5. The following colloquy took place:
   MS. BLEDSOE: But I sat here and said that was the instruction given me, that was the instruction given to me.
   THE APPEALS EXAMINER: Well, let me say you are under oath. That is the only thing I can say to that.

6. In that case, the court also sustained a determination of ineligibility of an obviously well-motivated claimant who had gone to Iowa to place his mother in a nursing home but who remained available to return on twenty-four hours telephone notice if employment became available. Although we need not decide whether or not such a determination would be sustained in the District of Columbia, we suggest that it is not forbidden even for agencies concerned with protecting the public fisc to exercise their discretion in a humane manner. Surely the milk of human kindness may permissibly flow on occasion within coldly impersonal office walls. *See* D.C.Code § 46–110(4) (1981) (failure to report may be excused by the Board for "good cause.")

In her brief in this court, Ms. Bledsoe stated, referring to herself in the third person, that

> upon receipt of no monetary benefits, [she] proceeded in the highest of passive and respectful actions—she actively abided by, and much unaided by DES sought and gained employ.

Although Ms. Bledsoe's apparent readiness to work in the face of a discouraging job loss was laudable, she cannot use her own self-described respectful passivity as a shield from the consequences of her failure either to report after the initial determination of eligibility or to make effective inquiry as to why her compensation benefits were not forthcoming.

## III

■ Ms. Bledsoe also testified that she filed a claim for benefits in 1981 but that she was declared ineligible in connection with this claim for failure to report as directed. She asserted that she had received misleading information from DOES employees. According to the representatives of DOES, the agency had no record of a claim having been filed by Ms. Bledsoe for 1981. Ms. Bledsoe was likewise unable to provide either a written determination of ineligibility or any other documentation of this claim, although she did produce a document which suggests that she may have applied for unemployment compensation as a prerequisite for becoming eligible to receive food stamps. Upon this state of the record, the examiner found that

> in absence of tangible evidence and that a valid benefit year was established—or even that a claim was in fact filed—in September 1981, the question of benefits

payable on such a claim must necessarily be considered moot.

Although the word "moot" may not precisely describe the status of the controversy, the examiner's assessment of credibility, the lack of any specific documentary substantiation of the 1981 claim, the agency's lack of record of the claim, and Ms. Bledsoe's failure for three years to take any meaningful action with respect thereto, all understandably led the examiner to conclude that Ms. Bledsoe was not entitled to compensation for that year.

DOES further contends that if Ms. Bledsoe did file a claim and did receive a determination of ineligibility for 1981, then she had ten days thereafter to exercise her right of appeal. *See Gaskins v. District Unemployment Compensation Board,* 315 A.2d 567, 568 (D.C.1974). The agency claims that Ms. Bledsoe would have been advised of the ten-day limitation on the face of the document in which her ineligibility would have been determined, and that her failure to file a timely appeal bars her claim. In her reply brief, Ms. Bledsoe denies having testified that she received a determination of ineligibility for unemployment compensation, and claims that "the only ineligibility referred to was the one-time emergency food assistance grant/certification." Although Ms. Bledsoe's explanation appears at odds with her testimony before the examiner—she then described the document as stating that she had to report to the office biweekly to sign a slip and that she had failed to do so—our conclusion that substantial evidence supports the agency's finding of lack of proof of the claim obviates the need for us to reach this issue.[7]

---

7. The agency further argues, at page 11 of its brief, that

> this case involves claims for benefits which are premised on the belief that benefit entitlements are open ended and without limits. Petitioner's true argument is that once having qualified for benefits (1979) and being apparently qualified for benefits (1981) she is entitled to be paid whenever it is that she decides to try and collect. Respondent submits that the Court's acceptance of this position would be a clear invitation to administrative chaos

and the destruction of any notice of orderly claim administration which could not have been the intention of the legislature in enacting the unemployment compensation statutes. Although the arguments for some kind of limitation are persuasive, we need not and do not determine here whether, as the agency contends, either the general three-year statute of limitations, D.C.Code § 12–301(8) (1981) or the doctrine of laches, *Brown v. Dyer,* 489 A.2d 1081, 1084 (D.C.1985), would bar all or any part of Ms. Bledsoe's claims.

## IV

In *Dunn v. District of Columbia Department of Employment Services, supra,* 467 A.2d at 967, this court explained that

> Because of the limited scope of our review, we will reverse the findings of the Department only if they are "unsupported by substantial evidence in the record of the proceedings before the court." D.C.Code § 1–1510(a)(3)(E) (1981). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wallace v. District Unemployment Compensation Board,* 294 A.2d 177, 179 (D.C.1972) (quoting *Consolidated Edison Company v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

In determining whether there is substantial evidence supporting the agency's findings, we must consider the appeals examiner's opportunity to see and hear the witnesses and to assess their credibility first hand, rather than on the basis of a cold appellate record from which demeanor and manner of testifying cannot be discerned. In general, on questions of credibility, the fact-finding of hearing officers should be accorded great weight. *Arthur v. District of Columbia Nurses' Examining Board,* 459 A.2d 141, 146 (D.C.1983). Assuming, *arguendo,* that the examiner's brief findings in this case do not disclose in meticulous detail why he was not persuaded by Ms. Bledsoe's version of what took place,

> the agency is not legally required to explain ... why it favored one witness or one statistic over another.

*Monaco v. District of Columbia Board of Zoning Adjustment,* 409 A.2d 1067, 1070 (D.C.1979), quoting *Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission,* 402 A.2d 36, 47 (D.C. 1979). Moreover, given the lack of compatibility between the agency's established practice and what Ms. Bledsoe says she was told, and given further Ms. Bledsoe's long inaction under circumstances in which one who had been misadvised as she claims to have been would have been expected to protest promptly, the examiner's findings are consistent with a common sense assessment of the case. Accordingly, the agency's decision must be and it is hereby

*Affirmed.*