**Bruce E. GARDNER, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES, Respondent.**

No. 97–AA–1939.

District of Columbia Court of Appeals.

Submitted March 9, 1999.

Decided Aug. 26, 1999.

period of June 8, 1997 through June 28, 1997, pursuant to D.C.Code § 46–108(e) (1996),[1] because Gardner's lump sum severance payment, representing four weeks of salary, when divided into weekly sums, exceeded the amount of weekly benefits which Gardner would have been otherwise eligible to receive. Gardner concedes that the severance payment was to have represented one month of salary beginning with his May 30, 1997 termination date. However, he contends that because he did not actually receive the severance payment until July 7, 1997, the deduction provided for in § 46–108(e) was inapplicable, and he was entitled to unemployment benefits for the requested period. Gardner further argues that because § 46–108(e) is limited to the benefit week in which he actually got the severance payment, he was additionally eligible for unemployment benefits for the period from July 13, 1997 to August 2, 1997. Finally, Gardner asserts that his failure to receive a hearing before the appeals examiner on the merits of his benefits claim denied him due process. We affirm.

Bruce E. Gardner, pro se.

Michael A. Milwee, Washington, DC, was on the brief for respondent.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

Petitioner Bruce Gardner challenges a decision of the Department of Employment Services (DOES) denying him unemployment compensation benefits for the

## I.

Petitioner Gardner is a former attorney for the District of Columbia whose position was terminated on May 30, 1997. His letter of termination stated that Gardner would "receive a lump sum termination payment that will be equivalent to an additional four (4) weeks salary." On June 13, 1997, after still not having received the promised severance payment, Gardner began to file for weekly unemployment benefits, with the first claim effective the week ending June 8, 1997.[2] On his benefits

---

1. D.C.Code § 46–108(e) provides in pertinent part as follows:

 Any individual who is unemployed in any week as defined in § 46–101(5) and who meets the conditions of eligibility for benefits of § 46–110 and is not disqualified under the provisions of § 46–111 shall be paid with respect to such week an amount equal to the individual's weekly benefit amount less any earnings payable to the individual with respect to such week deductible in accordance with the following formula: $20 will be added to the weekly benefit amount; from the resulting sum will be subtracted 80% of any earnings payable to the individual for such week.

2. The record contains none of the claims forms Gardner states he filed. The District contends that it has no record that Gardner filed the requisite claim forms for any part of the period beyond the week ending June 28, 1997, with respect to which Gardner claims he is entitled to receive unemployment benefits.

application, Gardner indicated that he would receive severance pay equal to $929 per week for the period between May 30, 1997 and June 28, 1997. Gardner actually received the severance payment in a lump sum on July 7, 1997, almost forty days after he was discharged.

On July 28, 1997, Gardner visited the DOES office to inquire as to why he had not received unemployment benefits for the month of July. At this time, Gardner signed a fact-finding report which stated:

> The severance pay was for a four week period starting with the May 30, 1997 termination date. I received one check for all the severance pay during the 2nd week in July. I am not entitled to any additional severance pay and I have not received claim forms for unemployment since the latter part of June.
>
> To date I have not received any unemployment benefits.[3]

On August 7, 1997, the claims examiner issued a decision stating that Gardner was not entitled to receive unemployment benefits for the period between June 8, 1997 and June 28, 1997, because pursuant to D.C.Code § 46–108(e), eighty percent of Gardner's weekly severance pay exceeded the total weekly benefit amount that Gardner had been eligible to receive ($309), plus twenty dollars.[4] Gardner appealed the claims examiner's determination, and a hearing on his appeal was scheduled for September 16, 1997. On that date, the hearing took place as scheduled, but Gardner failed to appear.[5]

As Gardner did not appear to present any additional evidence in support of his claim, the appeals hearing examiner based her decision solely on the claims record and affirmed the claims examiner's determination that the lump sum severance payment had rendered Gardner ineligible to receive unemployment benefits between June 8, 1997 and June 28, 1997. After receiving the September 17, 1997 appeals decision, Gardner mailed a letter to the Office of Appeals and Review (OAR) on September 20, 1997 contesting the appeals hearing examiner's decision and requesting a new appeal. Gardner explained his absence from the hearing:

> I inadvertently thought the hearing date was Friday, September 19th as opposed to Tuesday, September 16th. I realized my error on Thursday, September 18th and brought it to the attention of your office. I was informed the decision had been rendered and I would have any [sic] opportunity to have a new appeal date set.

By proposed final decision dated October 17, 1997, OAR affirmed the decision of the appeals examiner, concluding that her findings of fact and conclusions of law were supported by substantial evidence in the record. After receiving objections to the proposed final decision from Gardner,[6] OAR issued a final order affirming the

---

3. According to Gardner, he also prepared a second fact-finding report on August 5, 1997, which he claims was surreptitiously replaced by an August 6, 1997 report prepared by the claims examiner. The August 6, 1997 report, which was not signed by Gardner, stated that Gardner's severance pay was intended to cover the period of June 1 to June 28, 1997 and that Gardner wished to re-open his claim. The August 5, 1997 report allegedly prepared by Gardner is not contained in the record.

4. See note 1, *supra*. Gardner states that the examiner also determined that although Gardner had been eligible for unemployment benefits for the period between July 6, 1997 and August 2, 1997, these weekly benefits would be reduced by the lump sum severance

payment he received on July 7, 1997. This assertion is belied by the claims examiner's decision which notified Gardner of the "following determination holding you ineligible for benefits *from 06–08–97 to 06–28–97*." (Emphasis added.)

5. According to Gardner, he had phoned the DOES office on September 10 to ask for a postponement of the hearing because he had a job interview scheduled on the same day, but was informed by a DOES employee that the hearing would not be rescheduled.

6. Gardner did not explain his reasons for not appearing at the hearing in his objections to the proposed decision, other than stating that he had "reasonable cause" for his absence.

appeals examiner's decision, concluding that Gardner had received proper notice of the hearing, and that his absence from the hearing was a result of his own mistaken belief that the hearing was scheduled at a later date.

## II.

Gardner asserts that the applicability of D.C.Code § 46–108(e), and hence his entitlement to unemployment compensation benefits for the period between June 8 and June 28, 1997, is contingent on whether he had *received* the severance payment during the week for which he sought unemployment benefits. Thus, because he did not receive the District's severance payment until July 7, 1998, he contends that he was entitled to unemployment compensation benefits without any reduction for the severance payment prior to that time. Similarly, Gardner argues that he is entitled to receive benefits also for the period after the week of July 7 in which he received the severance payment. According to Gardner, § 46–108(e) reduces benefits only during the week a claimant actually received an offsetting payment. We reject this argument.

 "Under the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code §§ 1–1501 *et seq.* (1992), we must sustain the decision of the agency unless it is unsupported by substantial evidence in the record." *Washington Times v. District of Columbia Dep't of Employment Servs.*, 724 A.2d 1212, 1216 (D.C. 1999) (citing *Wallace v. District Unemployment Compensation Bd.*, 294 A.2d 177, 178–79 (D.C.1972)). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Wallace, supra,* 294 A.2d at 179 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). We defer to "an agency's reasonable construction of a controlling statute or regulation." *Selk v. Dis-*

*trict of Columbia Dep't of Employment Servs.,* 497 A.2d 1056, 1058 (D.C.1985).

Gardner relies on *Dyer v. District of Columbia Unemployment Compensation Bd.,* 392 A.2d 1 (D.C.1978), where this court held that "[i]n order to be 'unemployed' and be eligible for compensation under the [District of Columbia Unemployment Compensation] Act, an individual must not have performed any services or received any earnings during the period." *Id.* at 3; *see also* D.C.Code § 46–101(5). Accordingly, Gardner argues that because he did not work or receive any payments during the period between June 8 and June 28, 1997, or during the period between July 13, 1997 to August 2, 1997, he was "unemployed" for purposes of the statute, and therefore entitled to unemployment benefits during those time periods. Relying also on the purpose of the unemployment compensation statute to minimize the hardships encountered by workers who lose their job through no fault of their own, Gardner contends that he should have received benefits for the forty-day period after he was terminated as the District unreasonably withheld his severance payment during this time.

 Gardner's arguments are unavailing because nothing in the language of D.C.Code § 46–108(e) suggests that the reduction of weekly benefit payments by the amount of the severance payment[7] is contingent on the *receipt* of the severance pay in the specific benefit week. The statute expressly states that the weekly benefit amount is to be reduced by earnings *"payable"* to the claimant "with respect to" a specific benefit week. Thus, under § 46–108(e), a claimant's weekly benefit payment must be reduced by any earnings that are "requir[ed] to be paid" to the claimant for that week, irrespective of whether the claimant actually receives the earnings during the relevant week or whether the claimant receives the payment in installments or in a lump-sum. *See* WEBSTER'S THIRD NEW INTERNATIONAL DIC-

---

7. Voluntary dismissal, or severance payments are considered to be "earnings" for the pur-

poses of D.C.Code § 46–108(e). *See Dyer, supra,* 392 A.2d at 3.

TIONARY 1659 (1986) (defining the word "payable" as "requiring to be paid"). Gardner indicated in his June 13, 1997 application for unemployment benefits that he was due to receive severance pay equivalent to $929 per week for the period between May 30, 1997 and June 28, 1997, and his own signed statement in the agency's July 28, 1997 fact-finding report said that "[t]he severance pay was for a *four week* period starting with the May 30, 1997 termination date" (Emphasis [A]dded).

Our reading of the plain meaning of the statutory language finds support in the case law of other jurisdictions. In *Busch v. Reserve Mining Co.*, 415 N.W.2d 892 (Minn.Ct.App.1987), the Minnesota Court of Appeals held that the employer's agreement with the employee's union which obligated the employer to make a special pension payment "for the first three full calendar months following the month in which retirement occurs" was specific enough to allow allocation of the lump-sum payment for the purposes of offsetting the employee's receipt of weekly unemployment compensation benefits. *Id.* at 894; *see also Fazio v. Unemployment Compensation Bd. of Review*, 164 Pa.Super. 9, 63 A.2d 489, 491 (1949) ("a voluntary dismissal payment is 'remuneration,' and the employee who receives it does not become unemployed until the end of the period for which it was paid."), *superseded by statute as stated in Hock v. Commonwealth Unemployment Bd. of Review*, 50 Pa.Cmwlth. 517, 413 A.2d 444 (1980).[8] In so ruling,

the *Busch* court distinguished a prior decision by the Supreme Court of Minnesota which had held that the severance payment could be used to offset the employee's unemployment compensation benefits for only the week in which the payment was actually received. *See Ackerson v. Western Union Tel. Co.*, 234 Minn. 271, 48 N.W.2d 338 (1951); *see also Busch, supra*, 415 N.W.2d at 895. The *Ackerson* court had noted that severance pay usually is "in no way related to or dependent upon the employee's employment status after separation" so that even if the employee obtained a new position the day after termination, she would still be entitled to retain both her severance pay as well as wages earned at her new position. *See Ackerson, supra*, 48 N.W.2d at 342. However, the *Ackerson* court left open the possibility that if the employer had contracted with its employee to have the severance payment paid in weekly installments over a period of time, which was the situation later presented in *Busch*, this arrangement might prevent the employee from becoming eligible for unemployment compensation benefits. *See id.; cf. id.* at 341 ("[T]he payments were not designated as wages for a specific future period of time, as was done in the *Fazio* case."). *See also Fazio, supra*, 63 A.2d at 491 (receipt of severance check with notation "salary for February and March" barred employee from eligibility for unemployment benefits until end of period for which payment was made).[9]

---

8. See note 9, *infra.*

9. Due to a change in the language in subsequent statutes deleting the proviso that severance pay was to be considered remuneration paid or payable for the week for which the payment was made, the continued viability of *Fazio* in Pennsylvania is uncertain. In *Hock v. Commonwealth Unemployment Compensation Bd. of Review, supra*, 50 Pa.Cmwlth. 517, 413 A.2d 444, the court, interpreting the current unemployment compensation benefits scheme, held that the claimant was not disqualified from receiving unemployment compensation benefits even though he also received severance benefits. The court based its decision on the fact that it had been the employer's policy to pay terminated employ-

ees one week's salary for each year of service, and following other jurisdictions, held that the additional severance pay had actually been "earned" during the employee's years of service and not during the time he received the payment. *See id.* at 446–47; *see also Board of Regents of the Univ. of Neb. v. Pinzon*, 254 Neb. 145, 575 N.W.2d 365, 368 (1998); *State Dep't of Industrial Relations v. Deslattes*, 372 So.2d 867, 869–70 (Ala.Civ. App.1979); *Industrial Comm'n of Colo. v. Sirokman*, 134 Colo. 481, 306 P.2d 669, 672 (1957); *Walker v. Catherwood*, 28 A.D.2d 256, 284 N.Y.S.2d 584, 588 (N.Y.1967). Nevertheless, *Hock* is distinguishable from the facts here because there is no indication that the amount of Gardner's severance pay was relat-

■ Here, even though Gardner's termination letter from the District of Columbia did not expressly designate his severance pay for a particular period, Gardner represented to DOES, both in his initial benefits application as well as in the July 28, 1997 fact-finding report, that the severance payment was intended as remuneration for the four-week period immediately following the date of his termination.[10] Under those circumstances, it was reasonable for the agency, pursuant to D.C.Code § 46–108(e), to prorate Gardner's sever-

ance payment over the relevant period and correspondingly reduce Gardner's weekly unemployment compensation benefits. Therefore, as Gardner's weekly earnings, in the form of prorated severance pay, exceeded the maximum amount of unemployment compensation benefits he was eligible to receive,[11] the claims examiner's determination that Gardner was not entitled to collect unemployment compensation benefits during the period covered by the severance payment was supported by the evidence of record.[12]

ed to the number of years that Gardner spent in the District's employ. Accordingly, Gardner cannot be said to have "earned" his severance pay during the time he worked for the District.

10. The agency's UC 1–85 form describes the method by which the agency handles the deduction of severance pay from weekly benefit payments and provides as follows:

If paid in a lump sum, severance payment is treated as earnings in the week paid unless either the employer or *claimant* attributes it to a period of time. In this case, it will be prorated over the specified period of time.

(Emphasis added.)

*Dyer, supra,* is not to the contrary. In that case, the petitioner, who was given two months' severance pay immediately upon her dismissal for misconduct and had therefore already received the voluntary dismissal payments prior to her claim for benefits, was held not to be entitled to unemployment compensation benefits during the period for which the lump sum amount was payable to her. *See* 392 A.2d at 3. While it is unfortunate that the District delayed sending Gardner his severance pay, that delay does not render invalid the agency's determination that the prorated weekly amount Gardner was owed in the form of a severance payment was appropriately deductible from the unemployment compensation benefits to which he otherwise would have been entitled during such week.

11. Although the District does not make this argument, we further note that *Dyer* suggests that because Gardner received a severance payment covering a designated period of time, he was not "unemployed" during that pay period and therefore was not even eligible for compensation under the Act. *See Dyer, supra,* 392 A.2d at 3 ("an individual is *not unemployed* for a given pay period if he receives voluntary dismissal payments *for that period*") (emphasis added).

12. With respect to Gardner's contention that he also was entitled to receive benefits after the week he eventually received the severance payment, we note that the additional period for which Gardner is seeking benefits, July 13, 1997 to August 2, 1997, was not addressed in the claims examiner's decision. That decision dealt solely with the benefits period between June 8, 1997 to June 28, 1997. Nor was this additional claim addressed by either the appeals hearing examiner or OAR. As noted earlier, see note 2, *supra,* the District contends that Gardner did not file the requisite claims forms for these weeks. As the record does not contain the claim forms, we do not address the issue.

In the event that Gardner is still able to pursue benefits for this additional time period, however, we note that it will be incumbent upon him, as the claimant, to demonstrate that he filed the required weekly claims as required by the Act. *See* D.C.Code § 46–110(1) (claimant only eligible to receive unemployment benefits if he has made a claim for benefits for that particular week); *Dunn v. District of Columbia Dep't of Employment Servs.,* 467 A.2d 966, 967 n. 1 (D.C.1983) (noting weekly filing requirement). *Cf. Dunn, supra,* 467 A.2d at 967 n. 1 ("The Unemployment Compensation Act provides that an individual is eligible to receive unemployment benefits only if he or she has complied with all applicable regulations."); *see also Bledsoe v. District of Columbia Dep't of Employment Servs.,* 544 A.2d 723, 726 & n. 7 (D.C.1988) (not addressing District's contention that petitioner's claim was barred by general three-year statute of limitations under D.C.Code § 12–301(8), or doctrine of laches, where claimant failed to take any action for more than three years, but where substantial evidence supported the agency's finding of lack of proof of claim). We question, however, the District's contention that Gardner would have been ineligible to receive benefits for the week ending July 26, 1997 due to the one-week

## III.

Gardner also challenges the denial of a hearing on the merits of his benefits claim before the appeals examiner, noting that the Notice of Hearing stated that postponement of the hearing would be granted for cause. He asserts that because he had sufficient cause for his absence from the September 16, 1997 appeals hearing, to attend a job interview, the agency was required to either postpone the hearing, or else hold another appeals hearing. Because the agency afforded him neither option, Gardner argues he was denied due process of law. We disagree.

■ Title 7 of the DCMR, § 307.4 (1986), states that a claim may be reopened upon request by the party who failed to appear for the hearing if the party gives written notice to the Director within ten calendar days after the date of the hearing that the reason for his or her absence constitutes good cause, as determined by 7 DCMR § 316.4. *See id.*[13] One of the reasons considered to be "good cause" is "[s]eeking work where there is a reasonable indication that work is available." 7 DCMR § 316.4(c). Because a job interview certainly would qualify under this provision, if a claimant has properly presented the issue to the agency, he or she would have good cause for the absence and would not waive his or her right to present testimony. *Cf. McCaskill v. District of Columbia Dep't of Employment Servs.*, 572 A.2d 443, 446 (D.C.1990) (fail-

ure to appear at hearing without good cause waives right to present testimony), *opinion amended on other grounds,* 1990 D.C.App. LEXIS 128 (1990).

■ However, on this record, it does not appear that Gardner ever brought the fact that he had an interview on the scheduled hearing date to the appeals examiner's attention. In Gardner's letter requesting reconsideration of the appeals examiner's decision, Gardner did not mention anything about a job interview, stating only that he had thought that the hearing had been scheduled for September 19, rather than the 16th. Nor did Gardner proffer this reason in his objections to the proposed final decision; instead, he stated only that he had "reasonable cause" to request a new hearing date, and that the OAR had not addressed his request for rehearing.[14] In its final decision, the OAR determined that Gardner had not provided good cause for his failure to appear, attributing Gardner's absence to Gardner's own misconception of the hearing date. In view of the fact that Gardner gave no reason for his absence other than his own mistake, the OAR did not err in affirming the appeals examiner's decision without granting Gardner an opportunity to present additional evidence. *See McCaskill, supra,* 572 A.2d at 446 (failure to appear at hearing waives claimant's right to present testimony).[15]

13. The prior section, § 307.3, provides that if a party "fails without good cause" to appear at a scheduled hearing, the hearing examiner may postpone the hearing *or* proceed with a determination of the appeal on the evidence available. 7 DCMR § 307.3.

waiting period requirement in D.C.Code § 46–110(5). We think it would be sufficient for Gardner to demonstrate that he had satisfied the one-week waiting period in order to be eligible for benefits in subsequent weeks during a continuous period of unemployment, a requirement which would have been met here when Gardner filed his first claim application for the week ending June 13, 1997, which was the second week after he was terminated.

14. There is also no indication that Gardner complied with the procedural requirements for filing a request for reopening the record, because 7 DCMR § 307.7 mandates that written notice of this request be given to all of the parties, and must include the reasons for the request as well as a "clear statement of appeal rights."

15. We further note that Gardner's representation in his reply brief that he had called DOES' office on September 10 to request a postponement of the hearing due to his job interview appears to be inconsistent with his submissions to the OAR that he had "inadvertently thought the hearing date was Friday, September 19th as opposed to Tuesday September 16th."

Accordingly, the decision of DOES hereby is

*Affirmed.*