DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Petitioner,

v.

Kenneth M. LIPKINS, Respondent.

No. 07–AA–156.

District of Columbia Court of Appeals.

Submitted Feb. 26, 2009.

Decided Sept. 3, 2009.

Peter J. Nickles, Interim Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Michael A. Milwee, Senior Assistant Attorney General, were on the brief for petitioner.

Kenneth Lipkins, pro se.[1]

Before FISHER, BLACKBURNE-RIGSBY, and THOMPSON, Associate Judges.

BLACKBURNE-RIGSBY, Associate Judge:

Petitioner, Department of Employment Services ("DOES"), asks us to review the Administrative Law Judge's ("ALJ") de-

cision reversing the DOES determination and awarding respondent, Kenneth Lipkins, unemployment compensation benefits. Under the District of Columbia Unemployment Compensation Act, an individual may receive unemployment compensation if he or she meets certain statutory requirements. D.C.Code § 51–109 (2001). One such requirement is that an individual cannot have more than a certain amount of "earnings" in the year for which he or she applies for benefits. DOES disallowed respondent's claim for benefits in his first benefit year because it concluded that his severance pay was "earnings" which put him over the eligibility amount. Another requirement is that the individual must have earned a certain amount of "wages" in the year prior to the one in which benefits are sought. The problem here arises because DOES disallowed respondent's second claim for benefits the following year because it determined that even though his severance pay was "earnings," it was not "wages" and thus respondent had not earned enough "wages" to be eligible for benefits. On administrative appeal, the ALJ reversed the decision of DOES. We now reverse the decision of the ALJ.

**I**

Respondent, Kenneth Lipkins, had been employed in a management position at the Federal National Mortgage Association (Fannie Mae) when he was separated from his employment. He received severance pay in the amount of $81,844.40. Respondent filed his initial claim for unemployment compensation benefits on November 13, 2005. A DOES claims examiner determined that respondent was ineligible for benefits under D.C.Code § 51–107(e) (2001) because his severance pay was considered "earnings," causing

---

1. Respondent did not file a brief in this matter.

his total earnings to exceed the ceiling for benefit eligibility for benefits for the period of November 13, 2005 to September 9, 2006. However, respondent received benefits based on his 2005 claim for the remainder of his first benefit year-the period of October 14, 2006 to November 11, 2006.[2]

After the benefit year expired for respondent's 2005 claim, respondent was still unemployed and he filed a new benefit claim on November 27, 2006 for a second benefit year (November 2006 through October 2007). A DOES claims examiner denied the claim because respondent did not earn enough "wages"[3] during his *first* benefit year to qualify for a *second* benefit year. *See* D.C.Code § 51–107(c)(2) (2001) (requiring wages received "subsequent to the commencement of [his] last benefit year ... [to] equal ... at least 10 times the weekly benefit amount for which he qualifies in [his] last benefit year"). Specifically, the claims examiner determined that the severance pay[4] respondent received did not count towards the amount required by statute for requalification because it did not constitute "wages." Respondent appealed to the Office of Administrative Hearings. After a hearing, the ALJ issued a Final Decision on February 12, 2007, reversing DOES's determination that the severance pay did not constitute "wages" and awarding respondent benefits on the basis that the respondent's sever-

ance pay should be considered "wages" for the purpose of assessing respondent's eligibility during his *second* benefit year. *See* D.C.Code § 51–107(c)(2). This petition for review followed.

## II.

▪▪▪▪ In reviewing an ALJ's order we must affirm the decision if the ALJ "(1) ... made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding ..., (3) [the ALJ's] conclusions of law flow rationally from its findings of fact, and (4) ... [the] legal conclusions ... are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Berkley v. District of Columbia Transit, Inc.,* 950 A.2d 749, 759 (D.C.2008) (quoting *Rodriguez v. Filene's Basement Inc.,* 905 A.2d 177, 180 (D.C.2006)) (citations and internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gardner v. District of Columbia Dep't of Employment Servs.,* 736 A.2d 1012, 1015 (D.C.1999). We will not "affirm an administrative determination which reflects a misconception of the relevant law or a faulty application of the law." *Berkley,* 950 A.2d at 759 (quoting *Thomas v. District of Columbia Dep't of Labor,* 409 A.2d 164, 169 (D.C.1979)).

**2.** "Benefit Year" means:
the 52–consecutive–week period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits, and thereafter the 52–week–period beginning with the first day of the first week with respect to which the individual next files a valid claim for benefits after the termination of his last preceding benefit year.
D.C.Code § 51–101(8) (2001).

**3.** "Wages" are defined as, "all remuneration for personal services, including commissions

and bonuses and the cash value of all remuneration in any medium other than cash." D.C.Code § 51–101(3) (2001). The Code expressly excludes payments made for things such as "(i) Retirement; or (ii) Sickness or accident disability" from the definition of "wages." *Id.*

**4.** The regulations define "severance pay" as "a payment in addition to any back wages due made by an employer to an employee whose employment is permanently terminated by the employer." 7 DCMR § 399 (2008).

The ALJ's factual findings are undisputed and supported by substantial evidence in the record. In sum, the ALJ found that respondent received severance in the amount of $81,844.40 upon his separation from employment at Fannie Mae. The record indicates that respondent did not perform any additional work subsequent to his separation, and he did not receive any further compensation from Fannie Mae. Therefore, we address the ALJ's legal conclusions drawn from the factual findings. The ALJ concluded that the severance pay respondent received during his first benefit year constituted "wages" and that respondent was therefore qualified for unemployment compensation in his second benefit year. The ALJ's legal conclusion was predicated on an interpretation of the term "wages," and specifically whether severance pay can be considered "wages." *See* D.C.Code § 51–107(c)(2).

▉ DOES acknowledges that the severance pay respondent received is "earnings," but contends that it is not "wages" for the purpose of determining his eligibility for a second year of benefits under D.C.Code § 51–107(c)(2). The statute states in relevant part:

Wages received by an individual in the period intervening between the end of his last base period and the beginning of his last benefit year shall not be available for benefit purposes in a subsequent benefit year unless he has, subsequent to the commencement of such last benefit year, *performed services for which he received wages for employment as defined in this subchapter*, in an amount equal to at least 10 times the weekly benefit amount for which he qualifies in such last benefit year.[5]

Earnings means all remuneration payable for personal services, *including wages*, commissions, and bonuses … whether received from employment, self-employment, or any other work.[6]

Wages means all remuneration for personal services, including commissions, and bonuses[.] [7]

We agree with DOES's argument that "[i]t does not matter if Mr. Lipkins's severance pay is considered "wages" in the abstract because he did not return to new covered employment and earn ten times his weekly benefit amount from that new employment." The statute provides that wages cannot be included in the calculation of determining eligibility for benefits, unless the respondent *"performed services for which he received wages."* D.C.Code § 51–107(c)(2) (emphasis added). Such services must be performed *"subsequent to the commencement* of such last benefit year." *Id.* (emphasis added). Respondent did not "perform services" after the commencement of his first benefit year as required by the statute, and his remuneration was for services he had performed in the past, not for services performed after his separation from employment, during his first benefit year. The ALJ did not make a specific factual finding in his Final Order dated February 12, 2007, with regard to whether or not respondent received any other wages for services performed after his first benefit year began. However, the record indicates that during the hearing the ALJ asked respondent, "Did you by chance work at all, have any wages[?]" Respondent replied, "No, I didn't[.]" DOES's conclusion that the plain meaning of the statute requires respondent to have performed services *after* the start of his first benefit year is consistent with the express statutory language, and the ALJ did not refute DOES's con-

---

**5.** D.C.Code § 51–107(c)(2) (2001).

**6.** D.C.Code § 51–101(4) (2001).

**7.** D.C.Code § 51–101(3) (2001).

clusion regarding this aspect of the statutory requirement. *See* D.C.Code § 51–107(c)(2). The ALJ did not address the additional statutory requirements that the severance pay be received for services respondent performed after the commencement of respondent's first benefit year.

The record reflects that respondent did not perform services or receive wages after his first benefit year began. Accordingly, appellant did not satisfy the statutory requirements to qualify for a second benefit year. Because the respondent did not earn wages for services performed *"subsequent to the commencement* of such last benefit year," as required by the statute, we conclude that the ALJ's legal conclusion was inconsistent with the statutory language. Accordingly, we *reverse.*

*So ordered.*